WoodwoRTir, J,,
delivered the opinion of the court. In this cause the defendants apply for a new' trial on several grounds: 1st. That the verdict is against la.w.
2d. That the judge misdirected the jury, and admitted im proper evidence.
3d. That the verdict is against the weight of evidence.
#4th. That the damages are excessive.
For the plaintiffs, it was contended, that, in consequence of the grant from David Defreest to Thomas L. Whitbeck, under whom they derived title, a right to the undisturbed use of the water was acquired, and that the plaintiffs, as prior grantees of a common grantor, and as prior occupants pursuant to their grant, can sustain the present action against the defendants, and are entitled to recover the damages they have sustained. The grant has no bearing upon the point, whether the defendants are liable, but leaves it to be decided upon different principles. Defreest granted two acres of land, the privilege of digging a raceway or canal, and also of erecting a dam. to raise the water three feet six inches higher than the dam then was, with liberty to draw the water out of the kill through the canal so to be dug. The words of the grant being definite and certain, they are not to be extended by construction, so as to deprive the grantor of his mill privileges at other places on the same stream. Whitbeck''s grant is satisfied by allowing him to erect a dam, and by means thereof to draw' the *254 water from the creek to the canal: it does not convey the use of all the water, by a regular flow, uninterrupted by mills,.or water works above the plaintiff’s dam, and within the limits of the grantor’s right, but so much only as could be obtained consistently with the right the grantor had, to erect mills and place dams above : It was intended that each party should have a community of right to the use of the water, leaving the question, what shall constitute a lawful use, to be settled by the general principles of law, independent of the grant, should a conflict arise, thereafter, between the grantor and grantee. <>i their assigns.
Nor does the prior occupancy of the plaintiffs give them an exclusive right to the undisturbed use of the waters. In the case of Platt v. Johnson and Root, (15 Johns. Rep. 213.) Thompson, Ch. J., says, “To give such an extension to the doctrine of occupancy would be dangerous and pernicious in its consequences. The elements being for general and public use, where the benefit of them is appropriated to individuals, by occupancy, this occupancy must *be regulated and guarded, with a view to the individual rights of all who have an interest in their enjoyment.”
Neither party, then, having a superior right, by grant or prior occupancy, but both being, entitled to a common use, the inquiry is, Have the defendants withheld the water from the plaintiffs’ mill, and wasted it either wantonly or unreasonably? It. is a question of law, undoubtedly, whether the facts in any given case establish a right to recover; what the facts are, is exclusively within the province of the jury, subject to the review of the court, when an application is made to set aside the verdict. The common use of the water of a stream, by persons having mills above, is frequently, if not generally, attended with damage and loss to the mills below; but that is incident to that common use, and, for the most part, unavoidable. If the injury is trivial, the law will not afford redress; because every person who builds a mill does it subject to this conlin gency. The person owning an upper mill on the same stream, has a lawful right to use the water, and may apply it in order to work his mills to the best advantage, subject, however, to this limitation, that if, in the exercise of this right, and in consequence of it, the mills lower down the stream are-rendered useless and unproductive, the law, in that case, will interpose, and limit this common right, so that the owners of the lower; mills shall enjoy a fair participation ; and if, thereby, the owner» of the upper mill sustain a partial loss of business and profits,; they cannot justly complain, for this rule requires of Ihem no more than to conform to the principle upon which their right; is founded. It cannot, then, be admitted, that the defendant»: may use the water as they please, because they have a right tft a common use, although their works may require all the water, in order to derive the greatest profit. The plaintiffs' rights *255 must tie regarded ; they must participate in the benefits'-of the stream, to u reasonable extent, although the defendants’ profits may be thereby lessened. If the defendants insist on the unrestricted use of the water, and appropriate it accordingly, and this proves destructive to the mills below, the law in that case allows the party injured a compensation in damages, to the extent that, under all the circumstances, shall be considered an equivalent: In #that event, the plaintiffs receive no more than they would have realized by their business, had the defendants permitted the water to flow in a reasonable manner. If the defendants had run short heats in 1815 and 1816, it would have materially benefited the plaintiffs’ mills ; whether it would have enabled the plaintiffs to manufacture 50 or 70 barrels of flour in a day, is not ascertained, but there is no doubt that the quantity manufactured would have been considerably increased.
The jury have passed on the facts submitted to them. The verdict ought to stand, unless it is against the weight of evidence. or the jury were misdirected in point of law. It is contended, on the part of the defendants, that the judge did not instruct the jury correctly, as to the law applicable to the ease. After having stated that the first question would be, whether the injury sustained was in consequence of the drought; and, secondly, whether the plaintiffs’ dam was higher than it was agreed to be, the judge proceeded to state the law, and illustrate the principles upon which the action could be sustained. The objection seems to be, that the charge was not explicit, in stating what was right and lawful; but submitted to the jury “ whether the manner in which the defendant had used the water, in 1815 and 1816, was not inconsistent with the plaintiffs’ right.” It will be seen, I apprehend, that this is a mistaken view of the subject: the charge admits that the parties had equal rights to the use of the water, but that it was not correct lo say, the defendants could use it as they pleased ; although they were entitled to the use of all the water of the stream, yet they could not lawfully use it “ in an unreasonable manner, so as to destroy those below on the stream.” The judge explained this general position by a number of pertinent remarks, and intelligibly, I think, stated the law to the jury. The gravamen is, that the injury complained of is destructive of the plaintiffs’ rights: that, if the principle contended for by the defendants can be supported, the plaintiffs’ mills, in a dry season, would be nearly useless. How, then, could the jury be in doubt as to the law, when the judge informed them it was unlawful for the defendants to use the water so as to destroy the mills below, and then ^submitted' to them, whether the manner of using the water by the defendants had not been materially injurious, and destructive to the plaintiffs’ mills. This is substantially the charge as delivered, in which the law *256 was correctly laid down, and the questions of fact growing out of the case submitted, in a proper manner, to the jury.
But it is urged, that the paper containing a calculation of the damages sustained was improperly admitted. The judge observed to the jury, that the results of the subtractions and multiplications on the paper were correct, and that it must be used only to ascertain such results, but not in relation to any other fact proved on the trial; it could not, therefore, come within the rule which prohibits the delivery of writings not sealed to the jury, when they retire to consider of their verdict; (1 Tidd. Pr. 795.) but what seems to remove every objection is, that it may fairly be inferred, that the jury were not influenced by that calculation in giving their verdict. (3 Johns. Rep. 252. Tidd. 799. 779.) If they had assumed that calculation, the damages would have been considerably more than double; they must have, then, taken a different rule in reducing the damages 1,100 dollars below the amount claimed by the plaintiffs.
It is further contended, that the verdict is against the weight of evidence, and therefore a new trial ought to be granted. The question is, not whether the court might have differed from the jury, had the facts been submitted to their decision, but whether the testimony is so unequally balanced, that, in the exercise of a sound discretion, they are required to semi the cause to another jury. Without going into a detail of the evidence, I think I am warranted in saying, that, although there was conflicting testimony, and some difference of opinion, whether the injury sustained was in consequence of the drought in 1815 and 1816, there is but little doubt tfiat the natural flow of the water, uninterrupted by the defendants’ works, would have been sufficient, or nearly so, for the plaintiffs’ mills; and that, low as the stream was, during those seasons, had the defendants allowed the plaintiffs that reasonable participation in the use of the water, which by law they had a right to require, the damage sustained would have been materially less, if *not inconsiderable; but, allowing that the: evidence does not conclusively establish this fact, I am satisfied that the verdict on this point was not against the weight of evidence. With respect to the question, whether the use of the water by the defendants was such as to prove ruinous and destructive to the plaintiffs’ mills, it cannot well be doubl' d, that if the injury was not occasioned by the drought, it rcsiihi d from the acts of the defendants. Their works required double the ququntity of water used by the plaintiffs’ mills; they shut down their gates for several hours, and then let out the wr.mr in torrents; the plaintiffs’ dam could not be constructed s<> ¡i-¡ to detain more than a small portion ; the surplus was, consequently, wasted. The jury, on a review of the tes-liim>ii\. must have been satisfied that the plaintiffs had made out a ease *257 entitling them to redress, according to the general principles of law laid down by the judge; and the court consider that evidence sufficient to warrant such a conclusion.
It has been argued, that the damages are excessive, and that the judge should have instructed the jury, that if the defendants were liable, it could only be for the use of the water beyond their relative proportion. The court do not perceive any misdirection in this particular ; it followed, as a necessary consequence from the charge, that, in estimating the damages, the jury must be governed by this principle. It is not claimed by the plaintiffs, that any right to recover arises for the use of such relative proportion, but that the defendants, having unreasonably appropriated the water, in carrying on their own works, so as to deprive the plaintiffs of a beneficial use of it, thereby made themselves liable. In assessing the damages, it was undoubtedly proper to consider, that in 1815 and 1816, there was a great drought, and to make all proper deductions, as far as that cause had contributed to the plaintiffs'" injury; there is no reasonable ground to believe, that the jury were inattentive to this circumstance; the amount of the verdict is less than one half of the damages proved.
In refusing to grant a new trial, the court do not intend to question the law in Platt v. Johnson & Root, (15 Johns. Rep. 213.) This case is clearly distinguished, and does %ot impair that decision. In the case referred to, the court say, “ The principle sought to be established is, that a previous occupancy of land upon a stream of water, and an appropriation of the water to the purposes of a mill, gives such a right to the stream in its whole extent above, as to control the use of the water, so as to prevent any subsequent occupant from using or detaining the water to the least injury or prejudice of the first occupant; that unless the principle thus broadly stated, could be supported, the plaintiff must fail.”
Now, in this case, the right to recover is not placed on the ground of prior occupancy, and when the facts in the two cases are compared, it will be seen they are materially different. In Platt v. Johnson & Root, it is stated, “ that in very dry seasons the plaintiff had occasionally to wait for the water, until the defendants had raised a pond sufficient to turn their mills it is not alleged, that the water was let out in such quantities as to become lost to the plaintiff, or to deprive him of a beneficial use. but, on the contrary, “ he might so alter his dam as to save all the waste water; that in dry seasons the usual quantity of water in the stream was sufficient to grind from ten to twenty bushels in a day, but when the grist-mill had a full head of water, it would grind sixty or seventy bushels a day, and that the plaintiffs mills were turned with much more force when the defendants raised their gates, by reason of the increased quantity of water.” From this statement, it is evident that the plaintiffs damages must have been trifling; that *258 there could have been no well founded complaint that the watei was wasted, but, on the contrary, it may be inferred, that the defendant’s dam was rather beneficial to the plaintiff than otherwise.
The court are, accordingly, of opinion, that the motion for a new trial must be denied, (a)
Motion denied.

 Vide Livingston v. Adams, 8 Cowen, 175. Stiles v. Hooker, 7 Cowen, 266.