POLLITT and ANDREWS *vs.* LONG.

The owner of land through which a stream of water naturally flows has the right to use the water, there, in any manner he may see fit, so that he does not interfere with the rights of other owners to the use of the water, on the stream below, or above.

This right to use the water is incident to the ownership of the land through which the stream naturally flows, and pertains alike to every owner of the soil.

And even if an owner has had the uninterrupted flow and use of a stream on his own land, for twenty years or more, he does not thereby acquire such a prescriptive right to such uninterrupted flow and use that he can prevent an owner of land on the stream above from using and enjoying the water upon his land in any reasonable and proper manner.

Yet an owner above may acquire a right, by prescription, to detain and obstruct the flow of water, to an accustomed extent, and for a fixed period, against the owners below. *Per* JOHNSON, J.

The right to water flowing through land is the right of use, only; and this is a right belonging to each owner, in common with every other owner of the land through which the stream naturally flows. No one owner can divert it from the land of another, or obstruct and detain it to the injury of another, without rendering himself liable in an action to recover damages, or to obtain such other relief, or remedy, as the particular case may call for.

All that the law requires of the party, by or over whose land a stream passes, is that he shall use the water in a reasonable manner, and so as not to destroy, or render useless, or materially diminish, or affect, the application of the water, by the proprietors below, on the stream. He must not shut the gates of his dams and detain the water unreasonably, or let it off in unusual quantities, to the annoyance of his neighbor.

Where the defendant, the owner of a mill situated above the factory of the plaintiffs, upon the same stream, had been in the habit of keeping his gates closed through several of the working hours of each day, and for that time depriving the plaintiffs wholly of the use of the water for their factory, and then letting it off in such unusual quantity that the plaintiffs could only use a small portion of it while passing, when, without such detention, they would have been able to run their factory constantly and without interruption; *Held* that this conduct of the defendant was clearly unjustifiable, and gave the plaintiffs a good right of action, at least to recover damages for the injury occasioned by the detention.

*Held, also,* that this was a proper case for the preventive remedy by perpetual injunction.

Since the Code, it is unnecessary, as a preliminary to that species of relief, to settle the right by any action at law, even where the right is doubtful.

The true measure of damages, in such a case, is the value of the use of the

Pollitt *v.* Long.

water to the plaintiffs, situated as they were, during the time they were wrongfully deprived of it.

Where, in such an action, the plaintiffs were allowed to prove, how many yards less of cloth they made, in consequence of the detention of the water by the defendant, than they could have made, had the water not been detained as it was, and what the profit on each yard manufactured and sold was, at the price at which they sold what they did make ; *Held* that this was clearly incompetent for the purpose of ascertaining the amount of damages sustained by the plaintiffs ; it being wholly speculative and conjectural.

APPEAL, by the defendant, from a judgment entered upon the report of a referee.

The action was brought to recover damages for the obstruction of a certain water course, in the town of Sardinia and county of Erie, upon which a factory, owned and operated by the plaintiffs, and a saw-mill, owned by the defendant, were located, and to obtain an injunction restraining the defendant from further obstructing the water of said stream. The defendant's mill is situate about one hundred and twelve rods above the factory of the plaintiffs, and the obstructions complained of consisted in the entire stoppage of the water by the defendant at his mill, at times, so that the plaintiffs were wholly deprived of the use thereof. The plaintiffs, in their complaint, claimed the right by prescription, to the uninterrupted use and enjoyment of the water of said stream for the purpose of propelling their factory, and further alleged that the use of the same by the defendant, as therein set forth, was unreasonable and unnecessary. The obstruction and stoppage complained of began on the 15th day of October, 1866, and this action was commenced about the 1st day of November, 1866.

The defendant, by his answer, denied all the material allegations of the complaint, except the ownership of the factory, and claimed a right to run and operate his mill, by prescription.

On the 18th day of December, 1867, the referee made his report, by which he found the facts, very minutely and

at great length.   The 27th and 28th findings of fact were as follows:

That during the time in October, 1866, when the plaintiffs' said factory was stopped and detained for an aggregate period of four days, as aforesaid, by the use of the water in said stream by the defendant for his said saw-mill, the said factory was of no use or profit to the plaintiffs.   That during said time the plaintiffs could and would have manufactured, in said factory, four hundred yards of woolen cloths, but for such stoppages and detentions, which by such stoppages and detentions they were wholly prevented from doing; and that upon said cloths the plaintiffs would have realized and received, for the manufacture thereof, twenty cents upon each yard thereof. That by said stoppages and detentions in the running and operating of the said factory as aforesaid, the plaintiffs had sustained damages to the amount of $80.

The referee found, as conclusions of law:   1st. That on the 15th day of October, 1866, and at all times between that day and the 26th day of the same month, the plaintiffs were and are entitled to have the water flow in said stream through and along the plaintiffs' premises to the factory, in the same manner and in the same quantities as it had been accustomed to flow therein prior to, and up to said 15th day of October, 1866; and that the stopping and detaining of said water by the defendant, on and after the 15th day of October, in the manner aforesaid, was a violation and infringement of the right of the plaintiffs.

2d. That the defendant should be perpetually enjoined and restrained from so using the water in said stream as to interrupt or interfere with the use thereof by the plaintiffs for their said factory, in the manner in which they had been accustomed to use the same prior and up to the said 15th day of October, 1866, and from preventing or interrupting the flow of the water in said stream through and along the plaintiffs' said premises, as it had

been accustomed to flow therein prior and up to the 15th day of October, 1866.

3d. That the defendant pay to the plaintiffs the amount of the damages sustained by them as aforesaid.

4th. That the plaintiffs recover the costs of this action.

And he directed that judgment be entered in favor of the plaintiffs for the recovery of the said damages, together with the costs of this action, and perpetually enjoining and restraining the defendant as aforesaid.

*H. C. Day,* for the appellant

I. The referee, upon his finding of fact, "That for more than twenty years immediately preceding the 15th day of October, 1866, the plaintiffs and their grantors, the owners of said factory, have had the uninterrupted use and enjoyment under a claim of right to such use and enjoyment of so much of the water flowing," &c., predicates his first finding of law. Warren B. Andrews purchased the saw-mill now owned by the defendant, about November 1st, 1844. At that time no question had arisen between the factory and the mill about the use of the water. About May or June, 1845, a dispute arose between W. B. Andrews, who is the brother of the plaintiffs, and who then owned the saw-mill, and the owners of the factory. Then, he swears, he used the water, subject to the orders of proprietors of the factory, for the time being, while he was there. Andrews sold it to O. J. Green, Nov. 24, 1863. It appears that during the greater part of the time, while Andrews owned it, he leased it to others, who ran it regardless of the factory, shutting down the gates in the daytime, and dusting them down and operating it whenever it was to their advantage to do so. Green owned the saw-mill from November 24th, 1863, to September 8th, 1864. He ran it with an eye looking solely to his own interest. If the factory people complained, he gave them water when he could, conveniently. The defendant purchased the saw-

mill of Green, and ran it ever since, as Mr. Green had done. The flume and gates of the saw-mill were out of repair during Mr. Green's ownership, and also during the defendant's ownership of the mill, down to the repairs of October 15th, 1866. The referee finds that the water flowed for 20 years prior to October, 1866, to the plaintiff's factory, *under a claim of right.* That the flume and gates of the defendant's mill leaked water into his race, under the same claim of right. When Andrews' tenants ran the saw-mill, and during the time Green ran it, so far as the factory owners were concerned, they mutually accommodated each other. The language of Bronson, J., in *Parker* v. *Foote,* (19 *Wend.* 313,) though often referred to and quoted, has never been qualified or questioned, regarding title by prescription, or the presumption of a grant. He says: "The enjoyment of the easement must not only be uninterrupted for the period of twenty years, but it must be adverse, not by leave or favor, but under a claim or assertion of right, and it must be with the knowledge and acquiescence of the owner." (*Flora* v. *Carbean,* 38 *N. Y.* 111.) If the defendant had never availed himself of the use of his mill-site while the plaintiffs had run and operated their factory with the full natural flow of the stream, still the plaintiffs would not have acquired, by such use, any superior rights in the stream, over the defendant, or abridged his natural right to the enjoyment of his water privilege whenever he sought to make use of it. There can be no prescription where there is no adverse user, and there can be no adverse user without creating a right of action. (*The Trustees &c. of Delhi* v. *Youmans,* 50 *Barb.* 316.) The false impression which the referee has as to prescriptive right acquired by the owners of the factory through their use of the water in running and operating their factory, enters into and shapes most of his findings. The finding at fol. 429 is predicated upon " the

manner in which the water flowing in said stream had been used by the proprietors of the factory," &c.

II. The finding of the referee, "that the present arrangement for propelling the factory by means of water in the stream, is the best practicable arrangement, with reference to economy in the use of water, that could be made," is wholly unwarranted by the proof, and in conflict with the referee's finding, that "the surplus, over and above what was necessary to run the factory, was wasted and wholly lost." The referee finds that the dam was and is constructed and used, not for the purpose of accumulating a supply of water. Loveland swears that the water would run out of the race in 15 or 20 minutes. The plaintiff Pollitt swears, "if defendant's gate is shut, our dam will operate our factory about half an hour." The plaintiffs' dam is constructed within a rod of the defendant's line; so that if the factory dam was raised very much it would set the water back upon the defendant's saw-mill. Yet the dam, placed as it is, might be raised eight inches or a foot, and double the capacity of the plaintiffs' pond, without interfering with the operation of the saw-mill. If the plaintiffs would clear out their race, the water in their pond would run the factory twice as long. The plaintiffs' attention has been repeatedly called to this. The plaintiffs abandon a dam, near their factory, giving them a pond equal to that of the defendant, which gave them water in greater abundance and more constantly than their race, and constructed a new dam within a rod of the defendant's premises. The factory pond of the plaintiffs was of about equal capacity with the saw-mill pond. The water there was more constant and abundant. If the plaintiffs had a dam properly constructed for their factory, the running of the saw-mill would not injuriously affect the running of the factory. Mr. Rider, a partner in the factory, talked of building a dam four or five rods below their present dam, to remedy the difficulty. The plaintiffs

use an artificial raceway, where the water is constantly absorbed, and let a stream pass their factory, in the original channel, as large as that of the raceway. All the other mills and factories on the stream run and operate with dams like the defendant's, and yet the referee finds "that the present arrangement for propelling the factory by means of water in the stream is the best." In this connection we may also turn to the finding of the referee: "When the gates of the saw-mill would be hoisted, the water would flow into and through the channel of the stream below, four or five times greater than could be used by the factory, and the surplus over and above what was necessary to run the factory was wasted and wholly lost." The same question was considered and disposed of, but not in the same manner, by Chief Justice Shaw, in *Gould* v. *Boston Duck Co.*, (13 *Gray*, 442–453.) He there says: "One of the grounds of plaintiff's complaint was, that when the water was very low, in times of drought, and the defendants detained it a few hours, or in one instance a whole day, to raise the water to a sufficient height to work their own factory, it came to the plaintiff's mill faster than he could use it, and ran to waste over his dam. If it was so, it was because he had works not adapted to the entire or best use of the stream; because his dam was too low, his reservoir not of sufficient capacity, or other cause, by which he was prevented from making the best use of the power of the water, when very low by reason of drought. If there was a loss of water at such times and from such cause, it was not one for which the defendants were responsible."

III. The findings of fact by the referee, at fols. 407, 408, 409, 431, 432, are contrary to the evidence.

IV. All the accredited text writers on this subject agree that an owner above has a right to the reasonable use of the water for mill or other purposes, whatever may be the effect upon the owners below, and he is not liable

Pollitt v. Long.

for obstructing and using the water for his mill, if his dam is only of such magnitude as is adapted to the size and capacity of the stream, and to the quantity of water usually flowing therein, and his mode of using the water is not unusual or unreasonable, according to the general custom of the country, in such cases, of dams upon similar streams. (*Thurber* v. *Martin*, 2 *Gray*, 394. *Wash. on Easements*, 253. *Pitts* v. *Lancaster Mills*, 13 *Metc.* 156. *Angell on Water Courses*, p. 117, §§ 116, 117.)

*Grover Cleveland*, for the respondents.

I. The evidence as to the reduced amount of the cloth manufactured by the plaintiffs, during the interruptions of the water by the defendant, and as to the average profit per yard of cloth manufactured by them, was properly received. It had already appeared, by the testimony of the witness, that at the time the interruption commenced, the plaintiffs had demand for all the cloths, and more than they made, and that they were making $2500 or $3000 worth, a month; and that for four days out of the ten immediately preceding the commencement of the action and, the service of the injunction, their factory had stood idle, by reason of the stoppage of the water by the defendant. The inquiry as to how much less cloth they manufactured during the continuance of the interruptions by the defendant, tended to show the character and extent of such interruptions, and that they were sufficient to call for the interference of the court. This proof, taken in connection with the evidence as to the average profits realized by the plaintiffs, upon the cloth manufactured by them, was also proper upon the question of damages. A part of the relief demanded in this action is the recovery of damages for the wrongful act of the defendant, in interrupting the operations of the plaintiffs' factory for a period equal to four days out of ten. In such cases, the loss of profits to which a party has been subjected, as a legitimate result of

the trespass, if they can be shown with reasonable cer-tainty, constitute a safe measure of damages. (*Sedgwick on Damages, p.* 80 ; 5*th ed. p.* 86, *note* 2. *White* v. *Moseley,* 8 *Pick.* 356. *St. John* v. *Mayor &c. of New York,* 6 *Duer,* 315. *Price* v. *Murray,* 10 *Bosw.* 243.) The profits the plaintiffs would have certainly realized from the manufac-ture of cloths, but for the interruptions caused by the wrongful act of the defendant, represented the value of the use of their property, of which they had been deprived ; and this has always been allowed in the estimation of damages. (2 *Greenl. Ev.* § 625.) If the court should be of the opinion that the principle upon which the damages were estimated is not the correct one under the circum-stances, the judgment may be modified by remitting the damages. (*Story* v. *The N. Y. and Harlem Railroad Co.,* 2 *Seld.* 85. *The People* v. *The Supervisors of Richmond County,* 28 *N. Y.* 112. *Brownell* v. *Winne,* 29 *id.* 400.)

II. The plaintiffs were entitled, by prescriptive right, on the 15th day of October, 1866, to the use and enjoyment of so much of the water flowing. in the stream as was necessary to keep the factory constantly in operation. The parties to this suit, simply as riparian owners, had each the right to the use of the water in the stream, in a reason-able manner ; and the defendant originally had the right to apply the water to work his mill, subject, however, to this limitation, that if in the exercise of this right, and in consequence of it, the plaintiffs' factory was rendered use-less and unproductive, the law would interfere and limit this common right, so that the plaintiffs should enjoy a fair participation. (*Merritt* v. *Brinkerhoff,* 17 *John.* 306.) This was the condition of affairs, and these were the rights of the parties, in the year 1842, when the factory was built, and in 1843, when the saw-mill was erected. The claim of the plaintiffs is, that by an uninterrupted use of the water of the stream in a certain manner for more than twenty years, that is, by the use of it for the purpose of

Pollitt *v.* Long.

propelling their factory, to the exclusion of the defendant's riparian rights, they have acquired the rights to sufficient flow of water to run their factory at all times when the stream is sufficient, without any interruption from the defendant, for the purposes of his mill. "If one proprietor has, during a period of twenty years or more, possessed and used the hydraulic property belonging to another, not by license or favor, but adversely and in derogation of the rights of such other proprietor, the law, upon considerations of policy and for the purpose of quieting a long possession, will presume a grant from the proprietor thus intruded upon, to the other, and will preclude the party who has thus acquiesced from asserting the right which he otherwise would have had." (*Townsend* v. *McDonald*, 2 *Kern.* 381, 391, *and cases cited. Baldwin* v. *Calkins*, 10 *Wend.* 167. *Belknap* v. *Trimble*, 3 *Paige*, 577.) This case was much like the case at bar, and fully sustains the position of the plaintiffs. (*Angell on Water Courses*, § 205. *Tyler* v. *Wilkinson*, 4 *Mason*, 397. *Miller* v. *Garlock*, 8 *Barb.* 153. *Brace* v. *Yale*, 10 *Allen*, 441.) In order to establish the plaintiffs' claim by prescription, his enjoyment of the water of the stream must be "continued uninterrupted and adverse—that is, under a claim of right, with the acquiescence and knowledge of the owner." (*Colvin* v. *Burnet*, 17 *Wend.* 564.) The referee has found, "that said factory was propelled and operated by means of said raceway and overshot wheel in 1842, and that ever since that year it has been, and still is, propelled and operated by means of the water flowing through this race upon said overshot wheel." And he further finds, "that for more than twenty years immediately preceding the 15th day of October, 1866, the plaintiffs and their grantors, the owners of the said factory, have had the uninterrupted use and enjoyment, under a claim of right to such use and enjoyment, of so much of the water flowing in the said stream as was necessary to keep the said factory constantly in

operation and running, whenever the quantity of water flowing in the natural channel of said stream above, through and along the said plaintiffs' premises, was sufficient for that purpose, and free from any interruptions in such use and enjoyment caused by the running and operating of said saw-mill." This amounts to a finding, that the plaintiffs have for more than twenty years, uninterruptedly used the water of the stream in a particular way—that is, for the purpose of at all times running their factory, to the exclusion of the defendant's riparian rights, and that such use has been adverse and in derogation of the rights of the defendant. If this finding of fact is sustained by the evidence, (as we claim it was,) the prescriptive right of the plaintiffs is complete. All the persons who were sworn, connected with the factory, or who had worked there, testified to the running of the factory without interruption from stopping of the water, up to the time the detentions by the defendant occurred. Here we have, then, this factory, first run in 1842, and without any interruption by detention of water, till about the spring or summer of 1845; then precisely such acts on the part of the mill owners as are now charged against the defendant; these were promptly complained of, and the right now claimed by the plaintiffs asserted, and recognized by the mill owners, and from that time up to October 15, 1866, the proprietors of the factory have continuously enjoyed the right to the use of the water as then claimed, in derogation and limitation of the riparian rights of the mill owners. Any interruptions that defeat the right by prescription must be interruptions of the right itself, and not of the mere user. (*Angell on Water Courses*, §§ 211, 212.) It is sufficient if for twenty years prior to October 15, 1866, the factory proprietors exercised the right claimed whenever they chose or found it necessary to do so. There is no testimony in the case showing that the right of the plaintiffs to have the water of the stream for the purpose of running the

factory, had ever been interrupted, and what the witnesses for the defense say in relation to the running of the mill, only shows that at certain times the water was sufficient for the mill and factory both.

III. The use of the water by the defendant after the 15th of October, 1866, was unreasonable, and an infringement of the plaintiffs' riparian rights. The referee has found "that the use of the water in said stream for said saw-mill, by the defendant, between the 15th and 26th days of October, 1866, in the manner described, was not a reasonable use thereof." The case of *Merritt* v. *Brinkerhoff*, (17 *John.* 306,) was very much like the case under consideration, so far as the claim that the defendant unreasonably used the water is concerned, and the jury having found against the defendant there, as the referee has in this case, the court refused to disturb the verdict. The interruptions in that case consisted of the defendants detaining the water in their dam for an hour or more at a time, and afterwards letting it out in such torrents that it would be wasted; and it was further proved that by such use of the water by the defendant, the mills of the plaintiffs were stopped from half an hour to two hours daily. And from a statement in the opinion of the court, we learn that the works of the defendant required double the quantity of water used by the plaintiffs' mills. There was no pretense that the detentions were wanton, or that the water was detained for any purpose except to run the defendant's works to the utmost advantage, without any reference to the rights of the plaintiffs in the stream. The referee has found the extent and cause of the stoppages complained of, that the water was wasted, and a detailed manner of how the mill was run at the time the interruptions occurred. These findings are: 1st. That on the 15th day of October, and on divers other days between that day and October 26th, by the shutting down of the defendant's gates in the day time, the water was stopped and detained from the plain-

tiffs' factory, and work therein was entirely suspended from one to three hours, etc. 2d. That when the gates were hoisted the water would flow in the stream below, in quantities four or five times greater than could be used in the factory, and the surplus was wasted and lost. He further finds, that all through the month of October, 1866, the quantity of water flowing in the natural channel of the stream was sufficient to propel the machinery of the factory, but not to operate the saw-mill; and he finds that it requires much less water to propel the factory than the saw-mill wheel. The facts above stated, as found by the referee, if the evidence warrants them, makes this case, so far as the same proceeds upon the doctrine of reasonable use, on all points analogous to the case of *Merritt* v. *Brinkerhoff.* The plaintiffs further claim that the use of the water in the manner complained of was unnecessary. The witness Hobart ran the mill after the repairs were made, and after the service of the injunction without, as far as appears, interrupting the factory. About the time he was building his new flume, the defendant declared to the witness Ellis, that he was going to try to build a flume so tight that the factory fellows could not run the factory by the water that leaked through.

*By the Court,* JOHNSON, J. The cause seems to have been tried before the referee as though the rights of the plaintiffs, to some extent, depended upon prescription by user. We do not see, from the evidence, that any such question arises on the plaintiffs' part, in the action. Their factory, as we understand the case, is upon their own land, through which the stream of water in question naturally flows. This gives them the right to use the water there in any manner they may see fit, so that they do not interfere with the rights of other owners to the use of the water, on the stream below, or above. This right to use the water is incident to the ownership of the land through

Pollitt v. Long.

which the stream naturally flows, and pertains alike to every owner of the soil. And even if an owner has had the uninterrupted flow and use of a stream on his own land for twenty years or more, he does not thereby acquire such a prescriptive right to such uninterrupted flow and use that he can prevent an owner of land on the stream above from using and enjoying the water upon his land in any reasonable and proper manner. An owner above may acquire a right by prescription, to detain and obstruct the flow of water, to an accustomed extent, and for a fixed period, against the owners below; but the defendant does not show any such right against the plaintiffs, and no such question, we think, properly belongs to the case. The main question, upon the merits, appears to be whether the defendant, in the exercise of his right to use the water upon his own lands, has been guilty of doing it in such a manner as to violate the rights of the plaintiffs, and deprive them of the lawful use of the same water, in whole or in part, for their factory below. The right to water flowing through land, is the right of use only; and this is a right belonging to each owner, in common with every other owner of the land through which the stream naturally flows. No one owner can divert it from the land of another, or obstruct and detain it to the injury of such other, without rendering himself liable in an action to recover damages, or to obtain such other relief or remedy as the particular case may call for. *Kent*, in his *Commentaries*, says : "All that the law requires of the party, by or over whose land a stream passes, is that he should use the water in a reasonable manner, and so as not to destroy, or render useless, or materially diminish, or affect, the application of the water, by the proprietors below on the stream. He must not shut the gates of his dams and detain the water unreasonably, or let it off in unusual quantities, to the annoyance of his neighbor." (3 *Kent's Com.* 440. *See*

*also Merritt* v. *Brinkerhoff*, 17 *John.* 306.) This is undoubtedly the true rule; and the rule of the civil law is, in this respect, substantially the same. Upon the facts found by the referee, the detention of the water by the defendant has been clearly unreasonable and unlawful, as against the plaintiffs. He had been in the habit of keeping his gates closed through several of the working hours of each day, and for that time depriving the plaintiffs wholly of the use of the water for their factory, and then letting it off in such unusual quantity that the plaintiffs could only use a small portion of it while passing, when, without such detention, they would have been able to run their factory constantly, and without interruption. This was clearly unjustifiable, and gave the plaintiffs a good right of action, at least to recover damages occasioned by the detention. It is said, in behalf of the defendant, that he has a right to the beneficial use of the water upon his own land, and that he cannot use it with any advantage or profit to himself, without detaining it as he has heretofore done, and in the manner complained of. But the plain answer to this is, that if this manner of using is substantially prejudicial to the rights of others, and sensibly diminishes the value of their rights to the common use, he must forego the use of it in that manner, and use it in some other way, though such other way may be less profitable. The true test is, whether the use complained of is really and sensibly injurious to the common rights of other proprietors. (*Tyler* v. *Wilkinson*, 4 *Mason*, 401. *Angell on Water Courses*, §§ 115–118.)

There can be no doubt, we think, upon the evidence and the facts found by the referee, that this is a proper case for the preventive remedy by perpetual injunction. This has been the rule in cases of this description, certainly ever since the case of *Robinson* v. *Lord Byron*, (1 *Bro. C. R.* 588; 2 *Story's Eq.* § 927; *Angell on Water Courses*, § 445; *Gardner* v. *Village of Newburgh*, 2 *John. Ch.* 162; *Corning*

v. *The Troy Iron and Nail Factory*, 40 *N. Y.* 191.) Many other decisions might be cited in our own courts in this State, to the same effect. The last case cited holds that since the Code it is unnecessary, as a preliminary to this species of relief, to settle the right by an action at law, even where the right is doubtful. The only difficulty in affording the remedy in a case of this kind is, in fixing the limit of the detention by the defendant in future, by decree. In this respect, however, I do not see but the referee has fixed it with as much exactness and particularity as the case admits of. The judgment ordered allows the defendant to use and detain the water for his own use, as it was used and detained, by the owners of the same premises, prior to the 15th of October, 1866. Of this the plaintiffs do not complain; and I think we should not disturb the judgment on this ground.

The reversal is placed solely upon the ground of the admission of improper evidence on the question of damages. The plaintiffs were allowed to prove, against the defendant's objection, how many yards less of cloth they made in consequence of the detention of the water, than they could have made had the water not been detained as it was; and what the profit on each yard manufactured and sold was, at the price at which they sold what they did make. This was clearly incompetent for the purpose of ascertaining the amount of damages sustained by the plaintiffs. It was wholly speculative and conjectural. It was mere matter of opinion whether the additional amount could or would have been manufactured had the water not been obstructed, and, if such additional quantity could or would certainly have been manufactured, whether it would or could have been sold at the same price. Speculative profits are not recoverable in an action for damages. (*Griffin* v. *Colver*, 16 *N. Y.* 489.) The true measure of damages in a case like this, is the value of the use of the

water to the plaintiffs, situated as they were, during the time they were wrongfully deprived of it.

The judgment, for this error, must be reversed, and a new trial ordered, with costs to abide the event.

New trial granted.

TALCOTT, J., did not sit in the case, having been, previously to his election, consulted as counsel.

[FOURTH DEPARTMENT GENERAL TERM, at Buffalo, June 6, 1870. *Mullin* P. J., and *Johnson*, Justice.]