HOYT *et al. v.* CLINE.

*(Supreme Court, General Term, Fourth Department. July, 1891.)*

1. WATER-COURSES—INTERFERENCE WITH FLOW OF WATER—INJUNCTION.
   In an action by the owners of a mill run by water to restrain the owner of a mill on the same stream, above plaintiffs' mill, it appeared that defendant had in his mill steam-power in addition to the water-power, and that when he was using the steam-power he would allow the water to accumulate in his dam during working days, so that the flow was cut off from plaintiffs' mill, and that during the night-time, and on Sundays, when plaintiffs could not use the water, defendant allowed it to run off. *Held*, that an injunction was properly granted perpetually restraining defendant from retaining the water except for the proper use of his mill, or from discharging it, except for the purpose of running his mill, or so as to relieve his dam, and from holding back the water in order to accommodate his steam-power.

2. SAME—EVIDENCE—PRIOR ACTS.
   It appeared in such case that defendant, on learning that plaintiffs were about to put circular saws in their mill, threatened to, and, after the circular saws were put in plaintiffs' mill, did, prevent plaintiffs from using water of the stream by detaining the water in his dam, and letting it run off at times when plaintiffs could not use it. *Held*, that it was not error on the trial to allow plaintiffs to show defendant's manner of using the water before the alleged wrongful acts, as giving a history of the whole transaction between the parties: the trial court expressly holding that no damages could be recovered except for acts committed between the dates alleged in the complaint, and that no amendment of the complaint would be allowed.

3. SAME—DECLARATIONS OF FORMER OWNER.
   Defendant having alleged as a counter-claim that plaintiffs had raised their dam so that they set back the water on defendant's premises further than they had a right to do, it was proper to permit a witness for plaintiffs to testify that the common grantor of the parties, while he was the owner of both mills, showed witness how high to build the rack, on the premises afterwards conveyed to plaintiffs,

so that flood-wood would go over the dam before going into the rack, as tending to show that plaintiffs' dam, which was built where the original dam stood, was not as high as the original dam.

**4. SAME—WITNESS—LEADING QUESTION.**

A witness for plaintiffs having been cross-examined in such case as to the manner in which the mills were used by the common grantor of the parties, while he was owner of both, it was in the discretion of the court to permit plaintiffs to ask the witness a leading question as to whether the water, at that time, was not used in such manner at the upper mill as to enable it to be used for running both mills.

Appeal from special term, Jefferson county.

Action by Horace P. Hoyt and Edgar S. Hoyt against John H. Cline to recover damages for and an injunction against the wrongful use by defendant of the water in a stream flowing past the mill-sites owned by plaintiffs and defendant, respectively. The court on the trial, in substance, found that the defendant was the owner and in possession of certain premises on Flat Rock creek, in the town of Alexandria, N. Y., upon which there was a saw-mill and grist-mill, and, for the purpose of supplying and running the same with water, the defendant maintained and kept a dam across the creek; that the grist-mill was run a portion of the time by steam-power; that the dam had been kept by the defendant more than 10 years, and the water of the creek used by him; that below and on the same stream the plaintiffs were the owners and in possession of certain premises on which there was a saw-mill and planing-machine used and operated by the plaintiffs for sawing logs and planing for customers, run and operated by water from said creek; for that purpose plaintiffs kept and maintained a dam across the creek at or near their mill, and were entitled to the use of the water of the creek, in running and operating their saw-mill and machinery, as it would naturally flow after its use by the defendant in a proper and economical manner, there being no use made of the water by the other or intermediate owners of the land or water-rights between the defendant's dam and the plaintiffs' dam; that the creek does not furnish sufficient water to run and operate the plaintiffs' mills during the dry season of the year, but during the spring and other months there is sufficient water to supply plaintiffs in operating their mills after its proper use by the defendant, if allowed by the defendant to flow naturally after its use by him, and not wasted. The court also, in effect, found that prior to May, 1861, Jason Clark was the owner and operated both the plaintiffs' and the defendant's mill-sites and property; that while Clark was in possession of the defendant's property he conveyed by warranty deed to H. P. Hoyt the premises occupied by him, containing 1 34-100 acres of land, with the right to flow as much of the land then belonging to said Clark as was then flowed by the dam on the premises conveyed; that in November, 1886, the plaintiff H. P. Hoyt conveyed by land contract to Edgar S. Hoyt an undivided one-half interest in said premises, and assigned all claims for damages by an instrument in writing to the plaintiffs by the name of H. P. Hoyt & Son; that, subsequent to the conveyance by Clark to H. P. Hoyt, George W. Clark acquired title to the mill property occupied by the defendant, and by deed dated August 1, 1870, conveyed such property to Milton J. Howard, the deed containing the following condition: "Subject to the right of Horace P. Hoyt, his heirs and assigns, to flow so much of said seventy-eight one-hundredths of an acre as will be flowed by the dam now erected at the lower saw-mill;" that through various mesne conveyances the premises were conveyed by Wayland Ford and others to the defendant, Cline, which deed also contained the same condition as was contained in the deed from Clark to Howard; that in 1849 Jason Clark was the owner of both mill-sites; that defendant's dam and property had been for some time in existence and use at that time, and in 1849 Clark built a dam at the lower mill, on what is now the plaintiffs' land, and erected the saw-mill where it is now; that in 1874 the plaintiffs' dam was rebuilt and repaired on the site of the old dam, and no higher than the dam as

built by Jason Clark; that the defendant's mill is above the plaintiffs' about .57 rods; that both mills were run by water until 1874, when defendant's grantor put steam-power in his mill; that defendant's dam sets back about a mile and one-half, and holds about 50 times as much water as plaintiffs', and when full will run plaintiffs' mill nearly a week; that the plaintiff Horace P. Hoyt put circular saws in his mill in 1885; that both mills have always done and now do custom work chiefly. The court further found that before February, 1885, and the putting in of the circular saws, there was no trouble by reason of the manner of the defendant's use of the water in the dam; that the defendant, after he became aware of the intention of Hoyt to put in circular saws, and after the same were put in, threatened to prevent Hoyt from using his saws by detaining the water, and letting it down when he could not use it; that the water does not flow back from the plaintiffs' premises to any greater extent than it did at the time the plaintiff Horace P. Hoyt acquired ownership of the lower mill property; that the defendant between February 1, 1886, and February 22, 1887, frequently let water down in floods during the night-time, and on Sundays, drawing his pond down from one to three or four feet, and then during the day-time held back the water and used his steam-power; that in this manner he interrupted the plaintiffs' use of the water-power, and that this was done persistently, and for the purpose of injuring and destroying the plaintiffs' use of the water; and that the plaintiffs have suffered damage by reason of the wrongful use by the defendant of the water at his mill in the sum of $200. The court held as matters of law: "(1) That the plaintiffs are entitled to the use of the water in their dam as it naturally flowed into the same, interrupted only by the proper retention and use thereof by the defendant in the operation of his water-power; (2) that the plaintiffs are entitled to judgment restraining the defendant from the wasteful use of the water-power from his dam, and preventing and restraining him from retaining said water excepting for the purposes of the proper use of his mill, and also from discharging the water, except for the proper use in running his mill, and to prevent actual injury to his property, and also enjoining and restraining him from holding back the water in his dam at all, unless it be reasonably necessary for him to do so in order to profitably operate his mill, and also enjoining and restraining him from holding back the water in his pond for the purpose of accommodating his steam-power, and also enjoining and restraining him, if the water be sufficient to run his mill without the steam-power, then from using his steam-power, and holding back the water, and then letting the water off rapidly, without using it, so as to relieve his mill or dam therefrom, and also enjoining and restraining the defendant from obstructing the flow of the water or detaining it for any other purpose than the reasonable use of it by the defendant for operating his mill; (3) that the plaintiffs are entitled to judgment for damages and the costs of this action, which are awarded to the plaintiffs to be taxed." From a judgment awarding plaintiffs $200 damages, and perpetually enjoining defendant from an improper use and interference with the water used by plaintiffs in operating their mill, defendant appeals.

Argued before HARDIN, P. J., MARTIN and MERWIN, JJ.

*C. W. Thompson* and *Wayland F. Ford*, for appellant. *H. Smith* and *Porter & Walts*, for respondents.

MARTIN, J. The principal controversy in this case arose over two questions: *First*, whether the defendant wrongfully interrupted and improperly interfered with the plaintiffs' use of their water-power, by retaining the water in defendant's dam during the day-time on week-days, and then discharging it onto the plaintiffs' premises in large and unusual quantities, in the night-time and on Sundays, when it could not be utilized by the plaintiffs in operating their mill and machinery; and, *second*, whether the plaintiff Horace P. Hoyt

had erected a dam that was higher than that which existed when he purchased the premises now owned by the plaintiffs, and thus overflowed the defendant's premises to a greater extent than they were overflowed by the water collected in the previous dam, or to a greater extent than he had a right to do. The former arose under the allegations of the complaint; the latter, upon the counter-claim set up in the defendant's answer. As to the defendant's counter-claim, the court found as a fact that the water did not flow back to the plaintiffs' premises to any greater extent than it did at the time the plaintiff Horace P. Hoyt acquired the ownership of the lower mill property. If this finding is upheld, it follows that the defendant's counter-claim was not established, and hence he was not entitled to the affirmative relief asked for in his answer. We have carefully read the evidence bearing upon this question, and, while it was conflicting, it was sufficient to sustain the finding of the learned trial judge. As this was a question of fact, and as the finding thereon was fairly sustained by the evidence, there is nothing in this branch of the case which would justify us in disturbing the judgment.

Upon the second question, the court also found with the plaintiffs. It in substance found that between February 1, 1886, and February 22, 1887, the defendant, while using steam-power to operate his mill and machinery, frequently collected the water of such stream in his pond, detained it during the week-days, and discharged it in floods into the stream during the night-time and Sundays, so that it could not be used by the plaintiffs to propel their mill and machinery below; and that he thus interrupted and materially interfered with the plaintiffs' use of their water-power; that it was done persistently, for the purpose of injuring and destroying the plaintiffs' use of the water of such stream; and that the plaintiffs sustained damage by reason thereof in the sum of $200. The findings of the court upon this question were amply sustained by the evidence. Assuming the facts as found, it is quite manifest that the plaintiffs were entitled to the relief awarded. *Merritt* v. *Brinkerhoff*, 17 Johns. 306; *Pollitt* v. *Long*, 58 Barb. 33; *Clinton* v. *Myers*, 46 N. Y. 511; *Bullard* v. *Manufacturing Co.*, 77 N. Y. 525; *Thomas* v. *Brackney*, 17 Barb. 654; *Thurber* v. *Martin*, 2 Gray, 394, 396; *Chandler* v. *Howland*, 7 Gray, 348, 350; *Gould* v. *Duck Co.*, 13 Gray, 451; *Davis* v. *Getchell*, 50 Me. 602; *Gerrish* v. *Manufacturing Co.*, 30 N. H. 478, 483. The court adopted the correct rule of damages, and the proof justified the amount awarded.

But it is claimed by the appellant that the court erred in admitting evidence as to the manner in which the defendant used the water prior to the time when such wrongful acts were alleged in the complaint to have been commenced, and subsequent to the commencement of the action. An examination of the appeal-book discloses that this evidence was admitted only for the purpose of obtaining a correct history of the whole transaction between the parties, and of enabling the court to determine whether the defendant's acts were such as would justify the court in granting the injunction sought. The court expressly held that the plaintiffs could only recover such damages as were sustained between the dates alleged, and that no amendment of the pleadings would be allowed. The admission of this evidence, when limited to the purposes mentioned, constituted no error that was prejudicial to the defendant, or that would require a reversal.

Nor do we find any error in the admission of the evidence of the witness Jackson Briggs to the effect that Jason Clark, the then owner and common grantor of the parties, went down with him and showed him how high to build the rack and attach it to the sill, so that the flood-wood would run over the dam before going into his rack. Clark was then the owner of both premises, built the dam where the plaintiffs' dam now stands, and transferred to the plaintiffs the right to maintain a dam equal in height to the one then erected by him. This evidence tended to show that the plaintiffs' dam was not as high as that erected by Clark, and hence that the waters collected in it would

flow back to a less extent than from the old dam. We think the evidence was admissible.

The plaintiffs were also permitted to prove by the witness Briggs that, while Clark owned both mills, the water was used in such a manner at the upper mill as to enable it to be used and husbanded for the purpose of running all the mills, the lower as well as the upper. The defendant objected to this evidence on the ground that it was incompetent and leading,—"the witness should describe the manner of using the water." This objection was overruled, and the defendant excepted. We do not think the exception was well taken. The evidence was admissible in explanation of evidence drawn out upon the cross-examination of the witness, as to the manner in which these mills were used by Clark while he was the owner of both, and the court, in its discretion, had the right to permit a direct question, although leading. We think the findings of the court were sustained by the evidence; that the judgment awarded was proper; that there were no rulings that require a reversal; and that the judgment should be affirmed. Judgment affirmed, with costs.

All concur.