Fulton County Gas and Electric Company, Respondent, *v.* Rockwood Mfg. Co., Inc., Appellant.

Third Department, June 19, 1923.

Waters and watercourses — action by lower riparian owner to restrain upper owner from interfering with flow — defendant who had dam but no plant to use power alternately increased and retarded flow without cause — defendant is restrained from interfering with flow until it connects dam and power with plant.

A lower riparian owner, who is using water power and has constructed a dam above its plant to regulate the flow, is entitled to an injunction restraining an upper riparian owner, who has erected a dam but has not connected the dam

**788** FULTON COUNTY G. & EL. CO. *v.* ROCKWOOD MFG. CO., INC.

Third Department, June, 1923. [Vol. 205

or power with any plant, from alternately opening the gates in its dam and increasing the flow and then closing them and thereby shutting off the flow until the pond above the dam is refilled, where it appears that such interference with the flow was without any just cause or excuse and apparently for the very purpose of injuring the plaintiff.

If the plaintiff does not have a right to maintain storage dams at the lakes above the defendant's dam, that fact does not justify the conduct of the defendant; nor is there any foundation for defendant's claim that the plaintiff was not justified in increasing the flow of water from the storage reservoirs after the defendant had emptied its pond and closed the gates to its dam, since that was done for the purpose of filling plaintiff's pond sooner and thus starting the flow at plaintiff's plant.

The restraining order, which prohibits the defendant from interfering with the flow of the water in the manner stated, protects the rights of the defendant and, as soon as it shall connect its dam and power with any plant to be operated, it may apply to the court for a modification and the court can then give to it all those rights in the stream to which, as a riparian owner, it is entitled.

APPEAL by the defendant, Rockwood Mfg. Co., Inc., from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Fulton on the 8th day of July, 1922 upon the decision of the court rendered after a trial before the court without a jury.

*John T. Norton,* for the appellant.

*Fred. Linus Carroll,* for the respondent.

VAN KIRK, J.:

The action is brought primarily to restrain the defendant from the wrongful use, manipulation and control of waters in Caroga creek to the damage of the plaintiff. The wrongful acts of which the plaintiff chiefly complains, and which, it is alleged and found, the defendant intends to continue, occurred in two periods in 1920, one during January to March inclusive, and one in October.

Plaintiff in 1920 was organized as a consolidation of existing companies. The developments of power and the construction of dams and the plant on Caroga creek were completed before the consolidation. The plaintiff is the owner of and entitled to all the rights of the several companies consolidated; and we shall speak of the developments and constructions as made by the plaintiff without distinction by name of the corporation which at the time did the work.

The record is very long and includes much evidence not material to the real issue in the case; and many questions are introduced which have no importance in deciding the rights of the parties here involved. The decision and findings are fully supported by the evidence. A detailed statement of these findings cannot be made without unduly and unnecessarily extending this opinion. Briefly the important facts established by the evidence and found

by the court are as follows: Peck's and Caroga lakes discharge into Caroga creek. The plaintiff, as authorized in its certificate of incorporation, had acquired the right to maintain, and had constructed and maintained, dams at the outlet of these lakes of sufficient height to store large quantities of water. On Caroga creek it constructed a dam fifty feet in height, giving a pond when full containing about 16,000,000 cubic feet of water, and from this dam had constructed a trunk or pipe leading two miles down stream to its electric plant. Caroga creek, in its normal ordinary flow, carries about 135 cubic feet of water per second and in its low stages about 100 cubic feet per second. Plaintiff's plant as equipped requires a low flow of about 100 cubic feet per second, and with peak load its requirements are somewhat higher. This was a reasonable and proper development for use of the stream under the circumstances. With the aid of the storage plaintiff invariably had sufficient water to operate its plant at all times including the peak load hours. Plaintiff is a public service corporation having contracts with and supplying electrical current for lighting cities, villages, homes and public buildings, and for supplying energy for factories and power purposes. The defendant was organized in 1916, with a capital of $25,000. It erected, upstream from plaintiff's pond, across Caroga creek, a dam which forms a pond containing about 35,000,000 cubic feet of water. In this dam were large gates, which, when fully opened, would empty the pond in a short time. Its pond being empty and with a flow in the stream of 100 cubic feet per second, it would take between four and five days to fill the pond. It has never constructed any plant, nor has it connected the water power at its dam with any plant or use of any kind. Its property is covered with a mortgage in the sum of $230,000, and it would require an investment of some $300,000 additional to erect a plant suitable for the use of its power. During the two periods in 1920 complained of, without any reasonable ground therefor and in disregard of the request of the plaintiff, the defendant repeatedly closed its gates until its pond was full and then opened wide the gates and emptied its pond. This great quantity of water so discharged in the stream could not be used by this plaintiff; and, when defendant's gates were again closed, the flow of the stream was stopped and plaintiff was wholly deprived of water to run its plant. An officer and director of the defendant declared, during the October period, that " he would operate the defendant's gates to suit himself, as no one had any jurisdiction over him," and " that the volume of water that he had let out on one dumping of defendant's pond would probably cost the plaintiff $1,950, as he had figured it out." Also during the

October period defendant put flash boards upon its dam, first two feet high and a little later one and one-half feet higher, making a total height of three and one-half feet, which increased the capacity of the pond 20,000,000 cubic feet and greatly lengthened the time necessary to fill it. While the defendant's gates were closed, after it had so emptied its pond and the plaintiff was thus deprived of water, plaintiff opened the gates at its storage dams and sent down water in larger quantity to fill defendant's pond sooner and thus got water to its dam in order to supply its needs.

A riparian owner having equipped his plant with machinery within the ordinary and reasonable capacity of the stream has a right to have the water flow continuously in its natural course and quantity and to the use of the water without obstruction by an upstream owner. It is true that when a riparian owner has constructed a plant which does not require a quantity of water beyond the ordinary normal flow of the stream, if in periods of drought it is necessary for him to draw down his pond in order to operate his plant, he is permitted to close his gates for such reasonable period as is necessary to restore the requisite head. But such use of the stream must not be wanton and must be for his needs and without unnecessary prejudice to the rights of other riparian owners; a riparian owner may not use the water as he pleases. All riparian owners upon a stream are held to a reasonable use of the water of the stream. The question of reasonableness is usually a question of fact, but where the facts are undisputed and the necessary inference from these facts is that the use is unreasonable, a question of law is presented. (*Merritt* v. *Brinkerhoff*, 17 Johns. 306, 320; *Clinton* v. *Myers*, 46 N. Y. 511; *Strobel* v. *Kerr Salt Co.*, 164 id. 303.) The trial court having found that the plaintiff's development and use of the stream is reasonable and that its operation of its plant was conducted with due regard for the size, character and flow of the stream and for the rights of the other riparian owners thereon, and having found the facts as to the defendant's conduct as above stated, the inference is unavoidable that defendant's use and manipulation of the stream was unreasonable and a wanton invasion of plaintiff's rights. The conduct of the defendant was such that the court was justified in finding that it intended to continue the improper and unnecessary operation of its gates to the prejudice of the plaintiff's rights. The manner in which defendant did operate its gates was reprehensible and the plaintiff was injured thereby without any adequate redress at law; the plaintiff was entitled to have such wrongful manipulation restrained. (*McKee* v. *D. & H. C. Co.*, 125 N. Y. 353.)

If it be a fact as defendant claims that plaintiff has not the right to maintain the storage dams at the lakes, that fact does not justify the conduct of the defendant; nor is there any just foundation for the defendant's claim that the plaintiff was not justified in increasing during the aforesaid two periods in 1920, the flow of water from the storage reservoirs. The opening of its gates at the outlets of the lakes was a proper and reasonable act to procure water so that it could perform its duties to the public under its contracts.

The terms and conditions of the restraining order sufficiently protect the rights of the defendant. As soon as it shall connect its dam and power with any plant to be operated, it may apply to the court for a modification of the restraining order and the court can then give to it all those rights in the stream to which as a riparian owner it is entitled.

The defendant was properly denied relief under its counterclaim. No act of the plaintiff has wronged the defendant in its rights, or in its lawful use of the stream, and none of its lands have been overflowed by act of plaintiff.

The judgment should be affirmed, with costs.

Present — H. T. KELLOGG, Acting P. J., VAN KIRK, HINMAN and HASBROUCK, JJ.

Judgment unanimously affirmed, with costs.