WILLIAM M. CLINTON, Respondent, *v.* CHARLES P. MYERS, Appellant.

No riparian proprietor has a right to use the water of a stream to the prejudice of other proprietors above or below, unless he has a prior right to divert it, or a title to some exclusive enjoyment. He may use the water while it flows over his land as an incident thereto, but he cannot unreasonably detain it, or give it another direction, but must return it to its ordinary channel when it leaves his estate.

A party has a right to erect a dam across a stream upon his land, and such machinery as the stream in its ordinary stages is adequate to propel, and if, in seasons of drought, it becomes inadequate for that purpose, he may detain the waters for such a reasonable time, as may be necessary to raise the requisite head to enable him to use it advantageously and profitably upon such machinery. He has no right to erect machinery, requiring for its propulsion more water than the stream furnishes at its ordinary stages, and operate such machinery by accumulating the water and discharging it upon those below in unusual quantities to their prejudice. Nor has he a right to create a reservoir, and detain and store the water therein for future use in a dry season.

Plaintiff erected a dam across a stream flowing through his land, and used it to detain the water in the pond during the autumn and spring, when his factory was adequately supplied with water from another source; when that failed the deficiency was made up from the reservoir thus created. Defendant, the owner of land upon the stream below, opened the gates and let off the accumulated waters, claiming the right so to do.

*Held,* that an injunction could not be sustained; that it was no argument therefor that the detention of the water was no injury to defendant, or that he insisted upon his legal rights to the water from bad motives, or purposes of annoyance.

While equity may not interfere to secure to a party a legal right of no value, it will not interpose to restrain him from enforcing such a right.

(Decided November 28, 1871.)

APPEAL from judgment of the General Term of the Supreme Court in the sixth judicial district, affirming a judgment in favor of plaintiff entered upon the decision of the court at General Term.

This action is brought to restrain defendant from opening the gate of plaintiff's dam, and letting off the accumulated waters.

At the village of Laurens, the plaintiff has a cotton factory, propelled by water power derived by means of daming, at the factory, a stream which takes its rise in a lake at a point three and a half miles distant; and is also the owner of the land forming the boundaries of the lake and at its outlet.

The lake is formed by springs that empty their waters therein, and by surface water during the rainy seasons, and from the melting of snows.

The defendant is the owner of a large farm between said lake and said factory, lying upon both sides of said stream, upon which is a water power and saw-mill, situate about half a mile below said lake.

In 1848, the grantors of plaintiff lowered the outlet of said lake seven feet below its original and natural position, and built a dam across said outlet seven feet higher than the level of such original outlet, making such dam, from the bottom of such deeper outlet to its top, fourteen feet in height.

A trunk and gate were placed in the bottom of such deeper outlet, and the same was used to save a large supply of water for the dry season; and in 1855, the plaintiff's grantors raised said dam four feet higher for the same purposes.

The dam has been used to restrain and detain the waters in said lake as a reservoir, during such portions of the year as the factory was adequately supplied with water from said stream, below said dam, and from its tributaries. When these sources failed to supply the necessary quantity of water, the deficiency was supplied from said reservoir in a steady and constant manner through the gate in the trunk, which is about a foot square.

The waters in and from said dam have been restrained and used, with the sole view of economizing and utilizing the same to the greatest possible extent, and in no case has said dam been used or controlled by plaintiff or his grantors viciously or in bad faith, with intent to injure, or in any way wrong the defendant or his grantors.

As said reservoir or lake has been maintained and used, it

has been and is of great practical value and benefit to said defendant's power.

The defendant, in the fall of 1866, and in March, 1867, before the commencement of this action, went upon plaintiff's premises, without his permission, and raised the gate in said trunk of the dam, and let off and discharged from said lake a large quantity of water, which was wasted and lost to said plaintiff, because the same was not then needed for his said factory, whereby the plaintiff suffered damage in the sum of $100, and the defendant, at the same and at other times, threatened to open said gate and let off said waters whenever he pleased, and claimed the right to do so.

The court decided, as matter of law, that plaintiff was entitled to an injunction restraining defendant, his agents and servants, from interfering with the plaintiff's said dams and water power, as prayed for in the complaint; and under that order judgment was entered.

*H. Sturges*, for appellant. Every riparian proprietor has an equal right to the use of the water of a stream. (3 Kent, 439; *Webb* v. *P. Man. Co.*, 3 Summer's, 189.) He cannot detain or divert the water. (Angell on Watercourses, § 95; *Merritt* v. *Brinkerhoff*, 17 John., 306; *Van Hoesen* v. *Coventry*, 10 Barb., 518; *Pollett* v. *Long*, 38 Barb., 20.)

*L. J. Burditt*, for respondent. A person owning land through which a stream runs, has a right to dam it and detain the water, provided he does not do it unreasonably to the material injury of the owners below. (Washburne on Easements.) The injury must be more than a theoretical one. (*Thompson* v. *Crocker*, 9 Pick., 59; *Cooper* v. *Hall*, 5 Ohio, 320; *Thomas* v. *Brackenbury*, 17 Barb., 654; *Shove* v. *Voorhes*, 2 Green Ch., 25.) A mere inconvenience is not a material injury. (*Hartzell* v. *Sill*, 12 Penn. St., 248; *Palmer* v. *Mulligan*, 3 Caines, 307; *Hay* v. *Sterritt*, 2 Watts, 327; *Hetrick* v. *Deachler*, 6 Penn. St., 32; *Wheeler* v. *Ahl*, 29 Penn. St., 98; *Merritt* v. *Brinkerhoff*, 17 Johns., 306;

*Pitts* v. *Lancaster*, 13 Metc., 156.) The upper proprietor has a right to detain the water so far as reasonable and necessary for mill purposes. (*Gould* v. *Boston Duck Co.*, 13 Gray, 442, 453; *Cary* v. *Daniels*, 8 Metc., 348; *Hetrick* v. *Deachler*, 6 Penn. St., 32; Angell on Watercourses, § 119; *Bardwell* v. *Pickering*, 22 Pick., 333; Washburn on Easements, 270; *Barrett* v. *Parsons*, 10 Cush., 367, 371; *Thurber* v. *Martin*, 2d Gray, 394.) The true tests of the use is, whether it is to the injury of the other proprietors or not. (Also see Angell on Watercourses, §§ 117, 118; *Merritt* v. *Brinkerhoff*, 17 John., 306; *Palmer* v. *Mulligan*, 3 Caines, 307.) The owner may change or deepen the channel on his own land, provided he returns the water at its accustomed point below. (*McLamont* v. *Whitaker*, 3 Rawl., 84; *Gould* v. *B. D. Co.*, 12 Gray, 442; *Norton* v. *Valentine*, 14 Vt., 239; *Ford* v. *Whitbeck*, 27 Vt., 265.) Defendant's grantor having consented to and assisted in building dam, he is estopped. (Angell on Watercourses, § 328; *Brown* v. *Bowen*, 30 N. Y., 519; *Manf'rs' and Traders' Bank* v. *Hazard*, 30 N. Y., 226; *Corning* v. *Troy Iron & Nail Factory*, 29 Barb., 311; Washburne on Easements, 287; *Ford* v. *Whitbeck*, 27 Vt., 265; *Devonshire* v. *Elgin*, 7 Eng. L. & Eq., 39; *Wetmore* v. *White*, 2 Caine's Cas., 86.) This is a case where perpetual injunction should be granted. (Angell on Watercourses, §§ 449, 450; Story's Equity Jurisprudence, § 901; *Corning* v. *Troy Iron and Nail Factory*, 39 Barb., 311.)

GROVER, J. The judgment restraining the defendant, from interfering with the gate and other structures of the plaintiff at the outlet of the pond, can be sustained only in case the plaintiff has the right to maintain the dam and other structures, and thereby control the flow of the water in the manner and for the purposes found by the Special Term. It was controlled by him; and for affecting which, the structures were erected. From these facts it appears, that the dam and structures were erected at the outlet of a natural pond of about forty acres, into which one or more small streams run, having

but a small quantity of water in a dry time flowing therein. But in the wet seasons, spring and fall, a much larger quantity flowed into and out of the pond. That the dam was constructed about ten feet above the natural outlet of the pond, and used to detain the water in the pond during such portions of the year as the plaintiff's factory was adequately supplied with water from a stream below the dam. (The latter a stream originating from another source.) And when this failed to furnish an adequate supply, the deficiency was supplied from the reservoir, in a steady and constant manner through a gate in a trunk of about a foot square. That the waters have been retained and used by the plaintiff with the sole view of economizing and utilizing the same, to the greatest possible extent, not viciously or with any intent to injure, or in any way wrong the defendant. It further appears from such finding, that the water was so detained by the plaintiff during the wet seasons in the spring and fall, until wanted for use by the plaintiff in the dry seasons of winter and summer. The judgment, in effect, determines, that the plaintiff has a right so to detain and use the water, it being necessary so to do, to give an adequate and profitable power to propel the machinery of a factory owned by him, situate about three miles below the outlet as against the defendant. The defendant is the owner of a parcel of land, situated upon both sides of the stream between the outlet and the plaintiff's factory, upon which there is a saw-mill operated by the defendant during portions of the year. The question to be determined is of great importance to the plaintiff, the case showing that his factory is of great value, which will be much impaired, if not wholly destroyed, by not enjoying the right to control and use the water in the manner claimed by him in this action. While this consideration should induce care in the examination of the case, it can have no weight in the determination of the legal rights of the parties. It is the duty of the court to apply the law as it is to the facts of every case, and give to every party his legal rights, irrespective of any hardship that may be thereby caused in any special case. It

is necessary to examine the question as to the rights of ripa-
rian owners, as the judgment for the plaintiff, to its full extent,
depends wholly upon those rights. Kent (3 Com., 439)
says, that every proprietor of lands on the banks of a river,
has naturally an equal right to the use of water which flows
in the stream adjacent to his lands, as it was wont to run
(*currere solebat*), without diminution or alteration. No pro-
prietor has a right to use the water, to the prejudice of other
proprietors, above or below him, unless he has a prior right to
divert it, or a title to some exclusive enjoyment. He has no
p:operty in the water itself, but a simple usufruct while it
passes along. "*Aqua currit et debet currere ut currere solebat,*"
is the language of the law. Though he may use the water
while it runs over his land as an incident to the land,
he cannot unreasonably detain it or give it another direction,
and he must return it to its ordinary channel when it leaves
his estate. In *Tyler* v. *Wilkinson* (4 Mason, 397), Judge
STORY, after a thorough examination of the authorities, says,
that every proprietor upon each bank of a river, is entitled to
the land covered with water in front of his bank to the mid-
dle thread of the stream, etc. In virtue of this ownership,
he has a right to the use of the water flowing over it in its
natural current, without diminution or obstruction. But,
strictly speaking, he has no property in the water itself, but a
simple use of it while it passes along. The consequence of
this principle is, that no proprietor has a right to use the
water to the prejudice of another. It is wholly immaterial
whether the party be a proprietor above or below in the
course of a river; the right being common to all the proprie-
tors on the river, no one has a right to diminish the quantity
which will, according to the natural current, flow to a pro-
prietor below, or to throw it back upon a proprietor above.
This is the necessary result of the perfect equality of right
among all the proprietors, of that which is common to all.
The natural stream existing by the bounty of Providence
for the benefit of the land through which it flows, is an
incident annexed by operation of law to the land itself. When

I speak of this common right, I do not mean to be understood as holding the doctrine that there can be no diminution whatsoever, and no obstruction or impediment whatsoever, by a riparian proprietor in the use of the water as it flows, for that would be to deny any valuable use of it. There may be and there must be allowed, of that which is common to all, a reasonable use. The true test of the principle and extent of the use, is whether it is to the injury of the other proprietors or not. There may be a diminution in quantity, or retardation or acceleration of the natural current, indispensable for the general and valuable use of the water, properly consistent with the existence of the common right. The diminution, retardation or acceleration not positively or sensibly injurious, by diminishing the value of the common right, is an implied element in the right of using the stream at all. The law here, as in many other cases, acts with a reasonable reference to public convénience and general good, and is not betrayed into a narrow strictness, subversive of common sense nor into extravagant looseness, which would destroy private rights. A water-course begins *ex jure naturae,* and having, taken a certain course naturally, cannot be diverted. *"Aqua currit et debet currere ut currere solebat"* is also the language of the ancient common-law. That is, the water runs naturally and should be permitted thus to run, so that all, through whose lands it runs may enjoy the privilege of using it. (Angell on Water-courses, section 93.) This is sustained by numerous judicial decisions and all elementary writers upon the subject. How far the natural flow of the stream may be interfered with by a riparian owner, to enable such owner to utilize the stream for the purpose of propelling machinery, has frequently been the subject of judicial examination. *Gould* v. *The Boston Duck Co.* (13 Gray, 443) may be regarded as a leading case upon this point. In this case the defendant had built a substantial dam upon the stream, and drew the water to its factory by means of a canal, and after using the same, returned it to its natural channel before it reached the plaintiff's land. The stream, at ordinary stages

of water, afforded an ample supply for the defendants' factory; but in seasons of great drought the defendants were unable to operate their factory, during all the usual working hours of each day, but were obliged, in order to create the requisite head and supply of water, to shut their gates earlier than usual on some days, and sometimes for an entire day, and thus arrest the usual flow of the water. This was the injury complained of by the plaintiff, who was the owner of a mill upon the stream directly below the dam, and who was injured, to some extent by being deprived of the use of the water, while the natural flow was thus arrested. The court held that this use of the water by the defendant was not unreasonable, and that if such use did at times interfere with the use which the plaintiff might have made of the water it was "*damnum absque injuria.*" The doctrine of this case simply is, that a party has a right to erect a dam across a stream upon his land, and such machinery as the stream, in its ordinary stages, is adequate to propel; and if the stream in seasons of drought becomes inadequate for that purpose, he has a right to detain the water for such reasonable time as may be necessary to raise the requisite head, and accumulate such a quantity as will enable him to use the water for the purpose of his machinery. I think this is the correct legal rule by which to determine the rights of riparian owners. This will enable each owner to make an advantageous use of the water. The machinery must be such as the power of the stream, in its ordinary stages, is adequate to propel. The water in times of drought, may be detained for such a length of time only, as is necessary to enable it to be advantageously and profitably used upon such machinery. If so used the accumulation will be discharged in quantities not beyond the usual flow of the stream. This will enable every owner in seasons of drought, when unable to use the water at all as then naturally flowing, to operate his machinery to some extent by obtaining the water so as to raise a proper head, and such quantity as to enable him to use the same. By so doing he is not liable to an action by an owner below, whose machinery does not require for its

operation all the water at an ordinary stage, but only such as naturally flows during seasons of drought, though to some extent injured by being deprived of the natural flow. But the machinery must be adapted to the power of the stream at its usual stage. An owner has no right to erect machinery, requiring for its operation more water than the stream furnishes at an ordinary stage, and operate such machinery by ponds full, discharging upon those below in unusual quantities, by means of which the latter are unable to use it. (*Merritt* v. *Brinkerhoff*, 17 Johns., 306.) In *Pitts* v. *The Lancaster Mills* (13 Metcalf, 156), it was held, that an owner had a right to construct a dam and detain the water long enough to raise a head by filling it, permitting it then to resume its natural flow. In *Brace* v. *Yale* (10 Allen, 441), it was held, that the erection of a reservoir dam upon a small stream and thereby detaining and storing up the water until the owner of the dam desired to use it, and drawing from the pond and using it when he had occasion, was a user of the stream adverse to the rights of the owners below; and if continued for a sufficient length of time refined into a right. This, in effect, is an adjudication that an owner has not a right to create a reservoir and store the water therein for future use; and that by so doing he violates the rights of the owners below, for the preservation of which the law will afford a remedy. The plaintiff cites *Hoy* v. *Sterrett* (2 Watts, 327); *Hetrich* v. *Deachler* (6 Penn., 32); and *Hartzell* v. *Sill* (12 Penn., 248), as sustaining the right to store the water for future use claimed by the plaintiff. *Hetrich* v. *Deachler* simply holds, that the reasonableness of the detention of water by the owner above to the injury of the owner below, depending as it must on the nature and size of the stream as well as the business to which it was subservient, was a question of fact for the jury, it being impossible to make any general rule. *Hoy* v. *Sterrett*, so far as the questions involved have any bearing upon the present case, is the same as *Hetrich* v. *Deachler*. In *Hartzell* v. *Sill* (12 Penn., 248), it was held, that the proprietor of a mill above had the right to detain

the water long enough for the proper use of his mill; and if by so doing the owner below was injured, it was "*damnum absque injuria;*" and whether longer detained than necessary, was a question of fact for the jury. This is an entirely different question from that involved in the present case; that is, whether when the stream furnishes more water than is necessary to run a mill, the owner has a right, by means of a reservoir dam, to store up such surplus water and detain it until he shall want it for use in a dry season. *Wheeler* v. *Ahl* is in conflict with the law of this State. In this case the defendant had erected machinery, that the usual quantity of water in the stream was inadequate to propel. It was held that he might erect a dam, accumulate the water, and with such accumulation, run his machinery, discharging the water in unusual quantities upon the owner below. This is in direct conflict with *Merritt* v. *Brinkerhoof* (17 Johns., 320). This right, claimed by the plaintiff, to detain such surplus water of the stream as he may not require for present use until wanted in a dry season, has no foundation in the law, and is in direct conflict with the maxim, *aqua currit*, etc. (*supra*). But it is insisted that this detention does no material injury to the defendant, but that, on the contrary, his power is made more valuable by this use of the water. The answer to this is, that he must be the judge whether he will accept of any such benefit. He is entitled to the water and to its use for sawing in the spring, according to the natural flow, and is not obliged to accept and use it for that or any other purpose during the drought of summer. Again, it is said, and the fact is so found by the Special Term, that the defendant insists upon his right to the natural flow of the water in the stream from a bad motive, and for the purpose of annoying the plaintiff. This is immaterial. Courts have no power to deny to a party his legal right, because it disapproves his motives for insisting upon it. The use of the water by the plaintiff, to the extent awarded by the judgment, and protected by the injunction, has not continued twenty years. The plaintiff has acquired no right by prescription. Whether he has any such a right

to detain the water by a five feet dam, as held by the court below, is a grave question upon the evidence; but, as its determination is not necessary, and as the evidence may be different upon another trial, I shall not examine or pass upon it. The counsel for the plaintiff cites from the opinion of WOODRUFF, J., in *Corning* v. *The Troy Nail Factory* (40 N. Y., 220), the proposition that, if it was clear that the restoration of the water was of no value to the plaintiff, the case would not call for equitable interference. Assuming this to be correct, it has no application to the present case. It may be true, that equity will not interfere to secure to a party a legal right of no value to him, but leave him to his remedy at law. But, interfering to restrain him from enforcing such a right, on the ground that it is of no value, is quite another affair. That is the present case. That equity will not restrain a party from enforcing his legal right, upon any such ground, is too clear for discussion. There was nothing in the evidence or findings, showing that the defendant was estopped from asserting his right to the natural flow of the water. The judgment appealed from must be reversed, and a new trial ordered; costs to be determined by the court in the decision of the case.

All concur, except PECKHAM, J., not voting.

Judgment reversed.