DANIEL A. BULLARD, APPELLANT, *v.* THE SARATOGA VICTORY MANUFACTURING COMPANY, RESPONDENT.

*Mill owners — rights of, as to detention of water.*

The defendant was the owner of a dam, and drew therefrom water to run his mill, and the plaintiff drew water from a dam situated on the same stream, below that of the defendant. The surplus waters from defendant's dam was sufficient to furnish the supply needed for the plaintiff's mill, except in times of drought, when defendant was obliged to shut the gates of his mill during the night to accumulate a supply for the next day, thereby cutting off the sup-

ply from plaintiff's mill during the time defendant's reservoir was filling. Defendant's mill was run only during the day, while that of plaintiff was run night and day. In an action brought to restrain the defendant from cutting off the flow of water during the night, the referee found that the detention was necessary, and for the sole purpose of enabling the defendant to propel its machinery during the day, and that such detention and use of the water was reasonable. *Held*, that the injury sustained by the plaintiff, by reason of such detention, was one for which the law afforded no remedy.

The plaintiff was only entitled to the use of a limited quantity of water. *Held*, that it rested upon him to show that the quantity used by him was less than that to which he was entitled.

APPEAL from a judgment in favor of the defendant, entered upon the trial of this action by the court without a jury.

The action was brought to restrain the defendant from the use of certain appliances, by means of which it is enabled to maintain at its mill a uniform flow of the waters of Fish creek throughout the entire year, and for damages. The plaintiff runs a paper mill propelled by water from this creek, and the defendant owns and operates a cotton factory about one mile above him on the same creek. The plaintiff claimed that the defendant wrongfully and unreasonably detained the water of the creek at its mill, and sought to prevent and restrain it from so doing.

*E. Fitch Bullard*, for the appellant.

*Edgar L. Fursman*, for the respondent.

BOARDMAN, J. :

In *Clinton* v. *Myers* (46 N. Y., 517, 518) the Court of Appeals adopts the rule as held by the Supreme Court of Massachusetts in *Gould* v. *Boston Duck Company* (13 Gray 442). GROVER, J., states the doctrine of that case, thus : " A party has a right to erect a dam across a stream upon his land, and such machinery as the stream, in its ordinary stages, is adequate to propel ; and if the stream, in seasons of drought, becomes inadequate for that purpose, he has the right to detain the water for such reasonable time as may be necessary to raise the requisite head, and accumulate such a quantity as will enable him to use the water for the purpose of his machinery." Farther on it is said : " By so doing the party is not

liable to an action by an owner below, whose machinery does not require for its operations all the water at an ordinary stage, but only such as naturally flows during seasons of drought, though to some extent injured by being deprived of the natural flow."

It is believed these principles are applicable to this case and are fatal to the plaintiff's right of recovery. It is not controverted that defendant had the right to erect dams and to utilize the natural reef of rock as dams in the manner in which it has been done. The machinery of defendant was beyond doubt of just proportions to the size of the stream in its ordinary stages of water. For about nine months of the year the ordinary flow of water would be sufficient to carry defendant's machinery for twenty-four hours in each day. During seasons of drought it was inadequate and the machinery could only be propelled during the day time by retaining the water in reservoirs during the night, for the next day's use. This the defendant has done and has thus made an advantageous use of the water. The plaintiff, desiring to run his paper mill day and night, is, in seasons of drought, thus deprived of water for a short time, while defendant's ponds are filling up. This is an injury for which there is no remedy, if the detention is necessary to the defendant's reasonable use and enjoyment of its mill privilege above. The learned judge at Special Term has found that the detention was for the sole purpose of enabling the defendant to use the water to propel its machinery, and that the water has not been unreasonably detained or discharged, and the use by the defendant of such water has been, and is, reasonable. If these conclusions of facts are warranted, it is an end to plaintiff's case. There is an abundance of evidence to sustain them. Indeed, I do not well see how it is possible to find otherwise.

The plaintiff, however, insists that the defendant should not close its gates at night entirely, since a part of the water might be allowed to flow through the gates and still enough be detained to fill defendants reservoirs before morning. I think the argument is more specious than sound. I know of no rule of law creating such an obligation on the upper owner. But the idea is quite impracticable. The power of saving just so much water as will suffice to fill the reservoirs, depends on the amount of water passing. That amount

varies from day to day. The defendant has observed the law if he has not unreasonably detained the waters. What form of instructions could the court give, founded on the partial opening of defendant's gates? How much should they be left open? What kind of a sliding scale could be inserted into an injunction order that would be just to plaintiff and defendant and yet capable of observation? What evidence is there in the case to justify or establish any such direction? No; the whole project is experimental, indefinite, uncertain and incapable of any practicable application. It would be of no service except to breed law suits. (13 Gray, 442.) I do not deem it necessary to say more on this point. The opinion of the learned judge on the trial is quite satisfactory and conclusive.

There is another suggestion having great force, apparently. The plaintiff by his deed is only entitled to a specific quantity of water. There is no evidence in the case that he has not at all times had as much water as by his deed he is entitled to. The defendant charges that the plaintiff uses a much greater amount than he has any legal right to; that such amount is necessary to run his machinery, and hence in times of drought he suffers for the want of such excessive quantity, while the ordinary leaking and flow from defendant's reservoirs and dams, would give him all that he could legally claim. The decision contains no findings of fact upon this point, nor do I find in the evidence the necessary means for determining it. It would seem, however, quite clear that the plaintiff ought not to recover, if he receives and uses or can use all the water to which he is entitled by the terms of his conveyance. The plaintiff, to establish his cause of action, should prove the deficiency. He has not done so. (*Gould* v. *Boston Duck Co.*, 13 Gray, 442; *Tourtellot* v. *Phelps*, 4 id., 370; *Bigelow* v. *Battle*, 15 Mass., 313; *Hetrich* v. *Deachler*, 6 Penn., 32.)

There are no exceptions on the admission or rejection of evidence that call for an examination. I think all such rulings were correct. But in equity cases courts rarely disturb a judgment by reason of the admission of improper evidence, or on account of the questions being objectionable as leading. In the present case the evidence objected to is inappreciable in its amount and in its effect. The same facts are proved elsewhere without objection, and indeed are substantially conceded throughout the trial.

We think the judgment is eminently right and proper, and should be affirmed, with costs.

LEARNED, P. J., and SAWYER, J., concurred.

Judgment affirmed, with costs.