HAYDEN v. MATHEWS et al.

(Supreme Court, Appellate Division. Third Department. April 14, 1896.)

1. WILLS—CONSTRUCTION—DESCRIPTION OF LAND.
　　Testator devised to plaintiff a mansion house, "with grounds attached,— about thirty acres,—now occupied by my agent, B." A piece of land adjoining the mansion-house property, but separated therefrom by a fence, and not shown to have any connection therewith, was claimed by the devisee as a part of the mansion property. The only evidence to show possession by the agent, B., who was the general agent of the testator, was that he ordered boys to desist from bathing on the beach in front of the land in dispute, whereas S., who had a lease of another lot, pastured his stock upon the land claimed. The mansion property, exclusive of the

disputed territory, and inclusive of a highway that passed through it, contained a little over 31 acres. *Held*, that a finding that the land claimed did not pass under the devise of the mansion property was proper.

2. ESTOPPEL IN PAIS.
An estoppel cannot be based on the mere declarations of a landowner as to the boundaries, with which she was was unfamiliar, or the fact of her refusal to give the adjoining landowner a map of her land made for her.

3. COST—EXTRA ALLOWANCE—PRACTICE.
In an action for an injunction to prevent trespasses to land and for recovery of the land, the value of the land, which was not shown by the pleadings as the subject-matter involved (Code Civ. Proc. § 3253), may be shown by affidavits for the purpose of an extra allowance of costs, on motion for such allowance.
Herrick, J., dissenting.

Appeal from special term, Warren county.

Action by Henry W. Hayden against Catharine E. Van Cortlandt, in which, on the death of defendant, Catharine T. R. Mathews and others were substituted. There was a judgment for defendants, dismissing the complaint, and plaintiff appeals. Affirmed.

Argued before PARKER, P. J., and HERRICK, PUTNAM, and MERWIN, JJ.

Henry W. Hayden, in pro. per.
Frost & Manser, for respondents.

MERWIN, J. The plaintiff is the owner of certain premises on the westerly shore of Lake George, at Caldwell, in Warren county, known as the "Mansion-House Property." The defendants own certain other premises in the same place, known as the "Fish-Pond Lot." The plaintiff claims, as a part of his property on the southern side, about four acres, which are uninclosed, and upon which there are some trees and shrubbery, and through which a small stream runs into the lake. There is now, or has been at some time, on this four acres, a fish pond. The defendants claim that this four-acre piece is within the boundaries of their property. The present action was commenced on June 29, 1894, against Catharine E. Van Cortlandt, who then owned the fish-pond lot. She died in January, 1895, and the present defendants have been substituted, as her heirs and devisees. In the complaint it is alleged that the southern boundary of plaintiff's property includes the four acres in question; that the defendant claims that her northern boundary includes the premises, and threatens to cut down the shrubbery and trees, and has committed acts of trespass upon the premises, and threatens to sell and convey the premises. Relief is asked, that in order to prevent irreparable injury to the premises, and multiplicity of actions of trespass, and a sale of the land by defendants, the defendants be enjoined from conveying the same, and from entering upon or using the premises, or cutting the trees or shrubbery, or exercising any acts of ownership, and that the plaintiff's boundary line on the south be established as he claims it to be. The defendants admit the acts of ownership, and claim that the original defendant, and they as her successors in interest, own the property. Both properties, in-

cluding the disputed territory, were owned by William Caldwell, who died on April 1, 1848. He left a will, afterwards duly proved, which was dated March 29, 1841. In this there was a devise to Eliza Mc-Gillis for life, with remainder upon her death to her lawful issue, of property described as follows: "Also, my mansion house, in the town of Caldwell, Warren county, and state aforesaid, with the grounds attached,—about thirty acres,—now occupied by my agent, Seth C. Baldwin." The balance of the lands of the testator in Warren county was devised, one third in fee to Catharine E. Van Cortlandt, one third in fee to Helen L. Parmlee, and the other third to Eliza McGillis for life, with remainder to her lawful issue. The ownership of plaintiff is under the specific devise above quoted. In 1851 a partition suit was brought in Albany county, which included all the property in Warren county of which William Caldwell died seised, excepting the mansion-house property. In this suit there was set apart to Catharine E. Van Cortlandt and Helen L. Parmlee the lot "known as the 'Fish-Pond Lot.'" Boundaries were given, and on the north the boundary was "by lot No. 15 Kennedy's patent." At the close of the description is the expression, "as the said premises are now leased to, and occupied by, John F. Sherrill." The defendants claim under this allotment. It was found and decided by the special term that the premises in dispute are not, and never were, owned by or in possession of the plaintiff, and are not now, and never were, embraced within, or part of, the mansion-house property, which the plaintiff owns. The plaintiff challenges the correctness of this finding and conclusion.

The plaintiff must stand upon his own title. Wallace v. Swinton, 64 N. Y. 188. His claim, therefore, to the property in question, must depend upon whether it is included in the description in the devise of the mansion-house, "with the grounds attached,—about thirty acres,—now occupied by my agent, Seth C. Baldwin." It was, in effect, found by the special term, upon sufficient evidence, that the property in dispute was not occupied by Mr. Baldwin as a part of the mansion-house property. It was not inclosed, and was separated from the grounds of the mansion house by a fence running along the north side of the four acres, from the lake to a highway. It was shown on the part of the plaintiff that Mr. Baldwin at divers times ordered away boys who were bathing on the beach in front of the disputed property. As Baldwin was the agent of the owner of all the property, this has not much significance on the question as to what was deemed to belong to the mansion-house property. On the part of the defendants, it was shown that Mr. Sherrill—who had in 1842, from Mr. Caldwell, a lease of the fish-pond lot—allowed his cattle to pasture up to the fence on the north side of the disputed lot. Nor can it be reasonably said, upon the evidence here, that the disputed territory was a part of "the grounds attached" to the mansion house. It was not inclosed with the mansion house, or shown to have been used in connection with it. The statement as to quantity, "about thirty acres," does not furnish any particular help. It is shown that the mansion-house grounds, exclusive of the disputed territory, and

exclusive of a highway which crosses them, contain 28.51 acres. Including the highway, there are 31.07 acres.

It is argued on the part of the plaintiff that the fish-pond lot, as set off by the commissioners of partition in 1851, did not include the disputed land. The north boundary of the lot so set off was stated, "Lot No. 15, Kennedy's patent." Concededly, this was a mistake, as the south line of lot No. 15 was in fact further south than the fish-pond lot extended. It is very difficult to say where the commissioners in partition supposed the lot line was located. It is argued that they supposed that the south line of the lot was coincident with the north line of the village, and so meant to place the fish-pond lot entirely within the village, and therefore it would not include the disputed land. Suppose this to be so; it would not add to land of plaintiff, or his predecessors in interest, beyond what was given them by the description in the devise.

It is argued that Catharine E. Van Cortlandt, by her declarations and acts after the partition, indicated her belief that her north line did not extend far enough north to include the disputed land. She was not familiar with the lot lines. The principle of estoppel did not apply. Masten v. Olcott, 101 N. Y. 152, 4 N. E. 274. It is quite clear that she never understandingly admitted that her title did not cover the land in question. The fact that she would not give the plaintiff a copy of a map made for her by her attorney, which she claimed was not correct, and concededly was not so in some respects, is not very material. The plaintiff had no claim on the map, and it was not a part of his title. It seems to me very clear that no good reason is apparent, on the law or the facts, for disturbing the conclusion of the special term that the description of the property in the devise under which plaintiff holds did not include the property in question. The plaintiff, therefore, did not make out a cause of action, and the complaint was properly dismissed.

It is claimed by the plaintiff that the order for an extra allowance was improper, upon the ground that, this being a suit in equity for an injunction, and the value of the land not being alleged in the the complaint, or proved at the trial, there was nothing upon which to base an allowance. The motion was not made at the trial, but afterwards, at special term, and was based on the pleadings, the testimony given at the trial, and affidavits which showed, among other things, the value of the land in controversy. The basis of an allowance under section 3253 was "the value of the subject-matter involved." In Conaughty v. Bank, 92 N. Y. 401, 404, it is said upon this subject that "the pleadings furnish the sole evidence as to what was the subject-matter involved." In the present case it appears clearly from the pleadings, as well as from the proceedings on the trial, that the subject-matter involved was the four acres which both parties claimed to own. Its ownership was the thing in issue. Its value is the basis for computing an allowance, though the action, in some view, may be for trespass. Warren v. Buckley, 2 Abb. N. C. 323. This value, if it does not appear at the trial, may, I think, be shown by affidavit. In the Conaughty Case (see 28 Hun, 374) the

proof of value was by affidavit, and the objection was not to the manner of proof, but that the necessary fact was not shown. The Code does not prescribe the manner in which the value shall be determined. In Hanover Fire Ins. Co. v. Germania Fire Ins. Co., 138 N. Y. 252, 255, 33 N. E. 1065, it is said of allowances under section 3253:

. "Whether an allowance shall be made in cases coming within the section is a question which arises after the trial and determination of the issues. The court may determine the question upon the facts disclosed on the trial, or brought to its attention by affidavits."

In that case the pleadings contained the only information as to value before the court, and it was said (page 257, 138 N. Y., and page 1065, 33 N. E.):

"If extrinsic proof had been given, a different question would have been presented. * * * If the value was not shown, and no evidence, admission, or proof given from which the court could arrive at any conclusion as to value, no allowance could be made."

The clear inference is that proof by affidavit is proper, and that is the practice. No other question is made as to the extra allowance. It follows that the judgment and order should be affirmed.

Judgment and order affirmed, with costs. All concur, except HERRICK, J., dissenting.