HENDERSON ESTATE CO. et al. v. CARROLL ELECTRIC CO.

(Supreme Court, Appellate Division, Second Department.   June 8, 1906.)

1. WATER COURSES—RIPARIAN RIGHTS.

    The use by an upper riparian proprietor of water for mill power, not in excess of the ordinary flow of the stream, is reasonable, and not in violation of the riparian rights of the lower proprietor.

    [Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, §§ 44, 45.]

2. SAME—RESERVATION IN DEED—ABANDONMENT.

    A reservation in a deed of riparian land of the right to use a mill pond as a reservoir for the purpose of flowage "as heretofore," for the benefit of the privileges below, is sufficient to reserve a privilege in the nature of an easement, which is not abandoned by mere nonuser, in the absence of unequivocal acts showing an intention to abandon.

    [Ed. Note.—For cases in point, see vol. 48, Cent. Dig. Waters and Water Courses, §§ 176, 183.]

3. SAME—INJUNCTION.

    Where a deed of riparian land reserved the right to use a mill pond as a reservoir for flowage "as heretofore" for the benefit of the privileges below, and improvements in the method and extent of the use were made by the grantee for 43 years without objection, an injunction will not issue to prevent its continued use in the same manner.

4. COSTS—EXTRA ALLOWANCE.

    In an action involving a water right worth $10,000 under a deed 43 years old, depending on proof of the conditions at the time the deed was made, an extra allowance of costs was properly granted.

    [Ed. Note.—For cases in point, see vol. 13, Cent. Dig. Costs, §§ 620–624.]

Appeal from Special Term, Dutchess County.

Action by the Henderson Estate Company and another against the Carroll Electric Company. From a judgment in favor of defendant, and from an order granting an extra allowance of costs, plaintiffs appeal. Affirmed.

The plaintiff the Henderson Estate Company and the defendant are the owners of water privileges on the Matteawan creek, having a common grantor, who conveyed the property now owned by the defendant on March 24, 1857, retaining the property now owned by said plaintiff. Said conveyance contained the following reservation: "Excepting and reserving the right to use the Clay mill pond as a reservoir for the purpose of flowage, as heretofore, for the benefit of the privileges below," and the following covenant: "And these presents are upon the express condition, so far as they convey the said Clay mill lot, that the said party of the second part, his heirs and assigns, shall forever keep in repair and good order the Clay mill dam, and make all necessary repairs and renewals of the same at his own proper cost and expense, for the purpose of keeping the Clay mill pond in its present condition as a reservoir, and for the purpose of flowage for the benefit of the privileges below." The plaintiff the Matteawan Manufacturing Company is the lessee of the plaintiff the Henderson Estate Company, whose property is located below the defendant's. At the time of the said conveyance, an industry employing from 30 to 40 employés, and requiring a substantial amount of water power, was conducted on the premises conveyed to the defendant's predecessor in title. The referee found that at no time prior to said conveyance had the dam in connection with said property been used or maintained as a reservoir for the purpose of flowage for the benefit of the privileges below, so as to interfere in any way with the industries conducted on said property, and that the property continued to be used without any interference from the owners or users of the power below. In the winter of 1863–64 said dam was

washed out and destroyed, and was rebuilt in 1875, without any complaint or demand having been made by the owners of the property below in reference thereto. By mesne conveyances the defendant became the owner of said property in 1892, and it also acquired title to property on the opposite side of the creek, upon which its lighting plant is now constructed. In 1895 a new and larger dam was erected below the old dam, so as entirely to submerge the latter. As a usual thing there is sufficient water for all mill owners, and the operation by the defendant of its said plant does not interfere with the operation of the plaintiff's plant, but in times of drought there is not sufficient water to operate to the full capacity the mills on the stream as now operated, and nearly all of them have installed auxiliary power. In times of drought the defendant uses the water power at night, opening its wheel at about 6 o'clock p. m., and running until the water is lowered in the dam to a point from which the dam can be filled by the ordinary flow of the stream by 8 o'clock a. m., and it uses the water through the day only to such an extent as will leave the dam full at 6 o'clock p. m. The plaintiffs' dam is not large enough to impound all of the water that passes the defendant's wheel during the night, with the result that a large part of the water runs over the plaintiffs' dam at night, and the flow of the stream during the day is so retarded that it does not get the full flow of the stream for more than a few hours. The referee has found that all of the factories on said stream, commencing with the property owned by the defendant, have from time immemorial used their water power by day or night to suit their convenience and need. One of the plaintiffs' predecessors in title reconstructed the flume and wheel pit on its property and installed different wheels in 1864. The requirements of all of the factories on the stream have increased since 1857, and changes have been made in the method of operation. It appears from the evidence that the property now owned by the defendant that came from the common grantor prior to 1857, while occasionally operated at night, was, as a rule, operated during the day. The referee has found that the defendant's use of the water was at no time unreasonable, or in violation of the provisions of the deed from the common grantor. It is inconvenient for the plaintiffs to operate their factories by night, and they seek in this action to enjoin the defendant from so operating its plant as to interfere with the normal flow of the stream to the plaintiffs' property during the day."

Argued before HIRSCHBERG, P. J., and WOODWARD, RICH, MILLER, and GAYNOR, JJ.

Edward S. Rapallo (Willard Parker Butler, on the brief), for appellants.

Allison Butts (John Hackett, on the brief), for respondent.

MILLER, J. The plaintiffs claim that they should succeed in this action upon two grounds—first, because their rights as lower riparian owners have been invaded by the defendant; second, because the rights reserved in the conveyance by the common grantor have likewise been violated.

As to the riparian rights. The law seems to be settled in this state against the plaintiffs' contention, as the doctrine of the leading case in Massachusetts (Gould v. Boston Duck Co., 13 Gray, 442) has been expressly approved and adopted by the Court of Appeals (Clinton v. Myers, 46 N. Y. 511, 7 Am. Rep. 373; Bullard v. Saratoga Victory Manufacturing Co., 77 N. Y. 525). The appellants cite Strobel v. Kerr Salt Co., 164 N. Y. 303, 58 N. E. 142, 51 L. R. A. 687, 79 Am. St. Rep. 643; and Pierson v. Speyer, 178 N. Y. 270, 70 N. E. 799, 102 Am. St. Rep. 499; but the logic of these cases is that the maxim sic utere tuc ut alienum non laedas, and the rule aqua currit et debet currere, ut currere solebat, must be applied so as to effect the highest

average benefit to all the riparian owners, instead of absolutely precluding the beneficial enjoyment of any one. Concededly some detention must occur in order to accumulate the water sufficiently to furnish any head for the generation of power, and unless each mill owner can cause such detention as a reasonable use may require, no one but the lowest on the stream could have any beneficial enjoyment thereof, and the test is whether the use is reasonable, not whether possible injury may result. Certainly the court will not undertake to regulate the hours during which the mill owners may operate their properties, especially in view of the finding of the referee, amply supported by the evidence, that it has been the immemorial custom of mill owners on the stream to operate both night and day, according as it suited their convenience. The defendant is entitled to the first use of the water by reason of its advantageous position on the stream. Concededly its requirements are not in excess of the ordinary flow of the stream. Its use is therefore reasonable, as the referee has found, and if such reasonable use results in some water escaping over the plaintiffs' dam without being utilized, the fault must be charged to the inadequacy of their dam to impound the water, because, so long as the defendant's use of the water is reasonable, it has the right during periods of extreme drought to detain it for a sufficient time to create a head, even though such detention results in depriving the lower riparian owners of the usual flow during some periods of the day. These conclusions are abundantly sustained by the authorities cited supra.

The question whether the defendant is violating the rights reserved by the plaintiffs' grantor in the deed to the defendant's predecessor in title is more difficult of solution. The plaintiffs do not claim under the covenant to maintain the dam, practically conceding in their brief that an action for the breach of such covenant would be barred by the statute of limitations. They only resort to such covenant in aid of and for the purpose of interpreting the reservation in the deed of the right to use the mill pond "as a reservoir for the purpose of flowage as hertofore for the benefit of the privileges below." There can be no doubt that this language was sufficient to reserve a privilege in the nature of an easement (Andrus v. National Sugar Refining Co., 72 App. Div. 551, 76 N. Y. Supp. 530, and cases cited), and mere nonuser is not sufficient to work an abandonment of an easement created by grant, at least in the absence of such unequivocal acts or conduct as show an intention to abandon. Welsh v. Taylor, 134 N. Y. 450, 31 N. E. 896, 18 L. R. A. 535; White v. M. R. Co., 139 N. Y. 19, 34 N. E. 887; Roby v. N. Y. C. & H. R. R. Co., 142 N. Y. 176, 36 N. E. 1053. The difficulty, however, consists in determining just what rights were reserved, and in determining this question the restrictions in the deed are to be construed strictly against the grantor. Duryea v. Mayor, 62 N. Y. 592. The plaintiffs contend that before the conveyance of 1857 it had been the custom of the lower mill owners to lower the gate at the dam in question whenever their necessities required more water, but the referee, upon conflicting evidence, has resolved this question in favor of the defendant, and we cannot say that the finding is not justified by the evidence. His conclusion was that the parties intended to reserve nothing more than the right to have a dam main-

tained, the dominate estate to receive no benefit therefrom, except as resulted from the storage of the water and the use of such water as flowed over the dam and through the wheels; but the plaintiffs insist that, even conceding this to be the correct interpretation, at least some privilege was reserved, and that a use of the property now in such manner as to interfere with the beneficial enjoyment of the plaintiffs' property violates the right thus reserved. It must be conceded that the use made by the defendant differs materially from that made of the property prior to the grant of 1857, but it is not clear that the parties intended to restrict the owner of the servient estate to the precise use made of the property prior to the grant. The parties may reasonably be supposed to have contemplated that with new improvements changes would occur in the method and extent of such use, and such changes have been occurring over a period of 43 years without a protest or suggestion from the plaintiffs or their predecessors in title that their rights were being invaded. It may well be that the common grantor, by whose conveyance the right in question was reserved, supposed that the mere reservation of a right to have a dam maintained without any restrictions upon the use which the owner could make of it would furnish the flowage desired for the privileges below. There are no express words restricting the owner of the servient estate respecting its use of the dam, and there is much force in the suggestion made by the learned referee that it is unreasonable to suppose that the grantee of a power designed to be used for an important industry would consent that the use of such power be made entirely subservient to the use of others. The only words in the deed descriptive of the use reserved are the words "as heretofore," thus leaving the matter entirely dependent upon parol proof, and while we are not prepared to say that the silence of the plaintiffs and their predecessors in title respecting the changes that have occurred over a period of 43 years has worked an extinguishment of the easement, such silence may be considered in determining the practical construction of the easement adopted by the parties themselves. Hazleton v. Webster, 20 App. Div. 177, 46 N. Y. Supp. 922; Mudge v. Sallisbury, 110 N. Y. 413, 18 N. E. 249. If the common grantor reserved nothing more than the right to have a dam maintained, the plaintiffs cannot complain. If it intended to restrict the use which the owners of the dam could make of it, so that such use should be subservient to the use of the grantor, apt language could have been used to express such intention; and, while we are not free from doubt respecting the intention of the parties, it is clear that such doubt must be resolved against the plaintiffs, who are invoking the extraordinary power of the court to grant injunctive relief, as in such case it is incumbent upon the plaintiff to establish by convincing and satisfactory proof that some clear legal or equitable right is being violated. Snowden v. Noah, Hopk. Ch. 348, 14 Am. Dec. 547. See, also, Reid v. Gifford, Hopk. Ch. 415, and cases cited therein. The plaintiffs are now attempting to claim a right which they have not asserted for 43 years, and while it is probably true that until the present method of operating the defendant's factory was adopted the plaintiffs' property was not injuriously affected by the changes that have occurred over said period, the plaintiffs' difficulty consists of the fact

that, to define the rights now asserted, they have to depend upon parol proof of conditions existing more than 43 years ago, as to which the referee has found against them upon evidence that, adopting the most favorable view to the plaintiffs, leaves the matter in doubt. Under such circumstances, the court will not interfere by injunction.

The plaintiffs also appeal from the order granting the extra allowance, and urge that there was no basis for such an order. The subject-matter involved was the right of the plaintiffs to have the unobstructed flow of the stream, and there is proof by affidavit uncontradicted that this was of the value of at least $10,000. The difficult and extraordinary character of the action must be conceded, and we think the value of the subject-matter involved was sufficiently proven to warrant the extra allowance. Hayden v. Mathews, 4 App. Div. 342, 38 N. Y. Supp. 905, affirmed 158 N. Y. 735, 53 N. E. 1126; People v. Page, 39 App. Div. 110, 122, 56 N. Y. Supp. 834, 58 N. Y. Supp. 239.

The judgment and order granting an extra allowance should be affirmed, with costs. All concur.